## HOXIE *v.* THE STATE.

1. It is competent, in a trial for murder, for the State to prove facts occurring after the homicide, when they tend to illustrate the motive which actuated the accused in killing the deceased.
2. There is no rule of law or evidence preventing a woman from testifying that she is not the wife of a man who is on trial for an offense against the penal laws of the State.
3. The use of unfair or improper language by an attorney in arguing a case will not be held cause for a new trial when it is certain that no injury could possibly have resulted therefrom to the losing party.
4. An instruction to a jury to consider the evidence of a named witness as they "would the evidence of any other witness in the case" is not open to the criticism that its effect was to place the witness on the same footing as to credibility as other witnesses. It simply and plainly meant that the jury were to weigh and pass upon the testimony of this witness as they did that of the others.
5. A charge which, whether abstractly correct or not, is more favorable to a party than he has any right to demand affords him no just cause of complaint.
6. A verbal inaccuracy in a charge, resulting from a palpable "slip of the tongue," and which clearly could not have misled the jury, is not cause for a new trial.
7. It is not improper for a judge to shape his general charge to a jury upon the evidence alone; but he should, at some stage thereof, appropriately instruct

the jury with respect to the prisoner's statement. .There is no complaint that this was not done in the present case.

8. It is not erroneous to refuse to put officers of court, whose presence therein is needed, under the operation of an order requiring the separation of witnesses ; nor is it error to allow a witness who had been "put under the rule" to testify, notwithstanding the fact that he had heard a portion of the evidence. His disobedience of the rule does not disqualify him, but renders him subject to punishment for contempt.

9. It is always within the discretion of the trial judge to reopen a case for the introduction of further testimony, when no unfair advantage can result therefrom, and the Supreme Court will not undertake to interfere with the exercise of such discretion unless it is manifestly abused to the injury of the complaining party. The use by a judge, in ruling that additional testimony might be introduced, of the words, "I will allow any testimony that will tend to elucidate the facts in this case," is not objectionable as intimating anything with respect to the probative value of the testimony thus let in.

10. The evidence fully warranted the verdict of guilty returned in the present case.

Submitted October 23, — Decided November 5, 1901.

Indictment for murder.    Before Judge Henry.    Floyd superior court.    July term, 1901.

*M. B. Eubanks,* for plaintiff in error.    *J. M. Terrell, attorney-general,* and *Moses Wright, solicitor-general,* contra.

LUMPKIN, P. J.  Upon a trial in the superior court of Floyd county, Jim Hoxie was convicted of the murder of John Weems, and by bill of exceptions assigns error upon the overruling of a motion for a new trial.

1. The theory of the State was that the accused, finding the deceased in a room with the concubine of the former under circumstances indicating that they had been engaged or were about to engage in illicit intercourse, shot and killed the deceased in a fit of jealous rage. In support of this theory the State was permitted to introduce testimony to the effect that immediately after the homicide the accused pursued the woman and gave her a violent beating. This testimony was objected to as irrelevant.    We think it was properly admitted as tending to establish the correctness of the State's theory.    That is to say, the testimony was competent as throwing light upon the motive actuating the accused in making a deadly attack upon the deceased.

2. The woman just referred to was allowed, over an objection interposed by the accused, to testify : "I am not the wife of Jim Hoxie." The objection was, that as she had been " shown to be, by the State's

witnesses, at least prima facie the wife of the defendant, and was reputed to be such, and that prima facie she was not a competent witness, that proof to make her such would have to come from some other source, and not from her." There is no merit in this objection. If the woman was the wife of the accused, she was, of course, incompetent to testify; but if not, she could testify as any other witness. She, of all others, knew what the truth of this matter was, and there is no reason, either in law or logic, why she should not have been allowed to state under oath whether or not she had ever been married to the accused.

3. During the argument of the solicitor-general in connection with the matter last above referred to, he used the following language: "If Hoxie had dared to have stated that any ordinary in Georgia or Alabama had issued him a license, I would have proven him an infamous liar." Counsel for the accused objected to this language, on the ground that it was unfair and not justified by law or the evidence. The court ruled that the objection was well taken, but did not caution the jury not to regard the improper argument of State's counsel. Upon the failure of the court so to do error is assigned. During the further course of the argument of the solicitor-general, he said: "Talk about the defendant being married to this woman! Negroes, as a rule, are of a low moral status; they care nothing about the marriage relation; they just take up with each other and stay until they get tired or find some other one they like better, and go off and take up with another, and never think about marrying." This language was also objected to as unfair and unwarranted by the evidence, but the court held the argument was legitimate and proper to be considered by the jury. We take an entirely different view of the matter, and do not hesitate to say that the jury should have been instructed not to regard any portion of the argument of the solicitor upon this line. We have, however, reached the conclusion that the grossly improper conduct on his part does not, in the present case, call for a reversal of the judgment denying the accused a new trial. There was no evidence whatever going to show that the woman with whom the accused had cohabited was in fact his wife, and in his statement to the jury he practically admitted that she was not. His precise language on this subject was: "I had done been at her home a little over two years. She had been staying with me a little over two years—

been as my wife about two years and a half. All her people knew it; every body in town knew it." " As far as she being my wife, she had been with me about two and a half years. Everybody here in Rome knew it." While, therefore, the objectionable remarks of the solicitor were to the effect that he could have proved that the accused had never obtained a license to marry this woman, and that negroes, as a rule, lived together in a state of unlawful cohabitation, no serious harm could have resulted to the accused, for the reason that it was an established fact that the marriage relation did not exist between himself and the woman with whom he had lived. In other words, the unwarranted argument of the solicitor could not have influenced the jury to find against the accused upon an issue as to which there was any real controversy. We nevertheless take occasion to once more condemn the reprehensible and wholly inexcusable practice of counsel seeking to sway a jury by means of an argument in no way warranted by the evidence upon which they are called upon to pass. As was said in *Ivey* v. *State,* 113 *Ga.* 1062, the State does not seek the conviction and punishment of any one accused of violating its laws, "unless the evidence shows his guilt beyond a reasonable doubt; nor will it permit its prosecuting officer to use any unfair means in the trial, or illegal argument in his address to the jury, to the prejudice of the accused." The argument of the solicitor-general in that case being highly improper and calculated to prejudice the minds of the jury against the accused, the judgment of the court below was reversed solely upon the ground that, "in the interest of impartiality and of justice, and of the dignity and decorum of the courts, a new trial should be had " because of the reprehensible conduct on the part of State's counsel.

4. The court instructed the jury, in substance, that should they find the woman with whom the accused had cohabited was not in fact his wife, then the jury would be authorized to " consider her evidence as [they] would the evidence of any other witness in the case." Complaint is made that this charge had "the effect to place this witness on a par with and entitle her to the same credit that should be extended to " certain other named witnesses who had testified. We do not think the charge open to this criticism. The court evidently intended the jury to understand that should they reach the conclusion that the woman was a competent witness to

testify at all, they should weigh her testimony as they would that of any other witness in the case; and we have no reason to apprehend that the jury were misled by the instruction given them as to this matter. Indeed, it would be a great strain to hold that the language used by the court was susceptible of the construction placed upon it by counsel for the plaintiff in error.

5. Another charge excepted to was in the following words: "If you find, gentlemen, that the circumstances were such at the time as to reasonably lead Hoxie to believe — that is, as a reasonable man — that they had just begun, or were about to begin, or had just concluded an adulterous intercourse; and if by reason of that, gentlemen, and if you find, acting on that and by reason of that, Hoxie took the life of Weems, then I charge you, gentlemen, it is a question, under the law which I have read to you just now, whether or not he would be justified in so doing; that is, all other instances which stand on the same footing of reason and justice as those enumerated shall be justifiable. It then becomes a question for the jury to determine whether, under those circumstances, the defendant Hoxie was justifiable in taking the life of Weems or not." It will at once be perceived that this charge was more favorable to the accused than he had any right to expect; for it was framed upon the theory that the woman over whom the fatal difficulty arose might be regarded as the wife of Hoxie, when, as stated above, the evidence showed she was not, and in his statement he made no pretense that she was. This being so, it matters not whether the charge was abstractly correct or otherwise, or open to the criticism made upon it that it was not sufficiently specific in certain respects. The giving of this instruction certainly did not operate to the prejudice of the accused, but was calculated to operate to his advantage, because it gave him the benefit of a defense wholly unsupported by proof or by his statement.

6. In charging upon the law of self defense, the trial judge inadvertently used the name of the accused, when evidently intending to refer to the deceased. It was palpably a mere slip of the tongue, and, viewed in the light of what the judge said in this immediate connection, could not possibly have misled or confused any intelligent man sitting as a juror. Upon this point, see *Wilson* v. *State,* 66 *Ga.* 591, and *Southern Bell Telephone Co.* v. *Jordan,* 87 *Ga.* 69.

7. In two of the grounds of the motion for a new trial error is assigned upon charges to the effect that, in determining what was the truth of the case, the jury should look to and carefully weigh the evidence before them. The objection urged against these instructions is, that they practically excluded from the consideration of the jury the statement of the accused. This is not a fair criticism; for, looking to the entire charge of the court, we find that the presiding judge fully complied with the practice which in *Vaughn* v. *State*, 88 *Ga.* 731, was approved; and there is no complaint that the judge failed to charge appropriately concerning the statement of the accused. As was said in the case just mentioned : " The general tenor of the charge of the court on the trial of a criminal case should be shaped by the evidence alone and the law applicable thereto, adding, or at some stage of the charge incorporating, the statutory provisions touching the prisoner's statement." See, also, in this connection, *Miller* v. *State*, 94 *Ga.* 1; *Lacewell* v. *State*, 95 *Ga.* 346; and *Sledge* v. *State*, 99 *Ga.* 684.

8. In several grounds of the motion for a new trial error is assigned upon the action of the court in allowing three of the State's witnesses to testify, who, notwithstanding they had been "put under the rule," remained in the court-room and heard a portion of the testimony. It appears that two of these witnesses were deputy-sheriffs, and that the court permitted them to remain for the reason that their services were needed. The remaining one of these witnesses heard the testimony of only one witness for the State and was examined as to matters concerning which he did not testify. Aside from all this, it has been held by this court that even where a witness who has been sequestered disobeys the order of the court and hears the testimony, he is not for this reason disqualified from himself testifying in the case. See *May* v. *State*, 90 *Ga.* 800, and cases cited.

9. Another complaint in the motion is that the court, after the conclusion of the opening argument for the defense, allowed another witness for the State to be sworn and examined. In ruling upon the propriety of so doing, the trial judge said, " It is entirely within the discretion of the court, and I will allow any testimony that will tend to elucidate the facts in this case." We agree with his honor of the trial bench that reopening the case for the purpose of receiving additional evidence was a matter entirely within

his discretion (*Reid* v. *State*, 23 *Ga*. 191), and we hold that there was, in this instance, no abuse of that discretion. We disagree with counsel for the accused in their contention that the remark of the judge above quoted " clearly intimated to the jury that, in the opinion of the court, the testimony offered and objected to tended to elucidate the facts in this case, and therefore caused the jury to attach greater weight to such testimony."

10. We have, in what has been said above, dealt with every question presented by the motion for a new trial having any semblance of merit, except that involved in the complaint that the verdict was contrary to the evidence. As to this contention it need only be said that there was ample evidence going to show that, in killing the deceased, the accused was guilty of the crime of murder, pure and simple.

*Judgment affirmed. All the Justices concurring.*