21818. SHEPPARD *v*. THE STATE.

482

DECIDED DECEMBER 15, 1931.   REHEARING DENIED JANUARY 12, 1932.

*McClellan & Jacobs, H. F. Griffin,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

LUKE, J.   The indictment in this case charges that, on May 20, 1929, in Bibb county, Georgia, Robert L. Wilson, alias Shorty Wilson, and Frank Sheppard did steal "one Buick touring-car automobile, of the value of one thousand dollars, and of the personal goods of J. P. Myddleton."   Sheppard was convicted, and he excepts to the judgment overruling his motion for a new trial.

Since the brief of evidence is so long, and the amendment to the motion for a new trial covers seventy-three pages and contains thirty-two grounds, we shall undertake to shorten this decision somewhat by stating enough of the evidence to indicate the nature of the case and shed some light upon the numerous special grounds, and by grouping some of the special assignments which involve the same principles of law.

J. P. Myddleton testified, in substance, that, on May 21, 1929, his "Buick touring-car automobile" was stolen and carried away from

a place where he had parked it on a certain street in Macon, Bibb county, Georgia; that about a week after his car was taken, he was apprised of the fact that the sheriff of Twiggs county had it; that there were a few scratches on the car when he got it back, and one tire had been exchanged; and that the automobile was worth about $600. S. G. Kitchens, sheriff of Twiggs county, testified, in substance, that, at about twelve o'clock on May 22, 1929, he saw the defendant with Shorty Wilson in a Ford automobile at Dry Branch, a point twelve miles from defendant's home, going towards defendant's home; that Wilson lived about fourteen miles from defendant's residence; that witness had frequently seen Wilson and defendant together in the same Ford; that witness had seen the Buick automobile hidden in the bushes about three or four hundred yards from defendant's house, and had instructed his deputies, John G. Slappy and a Mr. Barrentine to watch it; that witness "found the Ford roadster that evening at the defendant's house;" that the defendant claimed to own the Ford roadster; that witness turned said roadster over to "Mr. J. D. Lewis, the husband of Mrs. Lewis;" that after defendant was in jail, witness heard him say, in reply to questions of the solicitor, that the radiator "was like it was when he first saw it, and he didn't have anything to do with buying it," but was present when Wilson did; that the "radiator shell was on the Ford when he first saw it," that he had nothing to do with buying certain paint bought from T. C. Burke & Company, and that he had nothing to do with offering the Ford car for sale. The witness Kitchens further swore: "It was exactly ten days from the time I took charge of the Buick until Sheppard showed up, . . and during that time I had been looking for him and could not locate him. I . . asked him why he went off, and Mr. Griffin [his lawyer] said, in defendant's presence, 'He was scared.'"

Joe Daniel testified, in part, that he remembered the defendant's coming to the place of business of the Daniel-Johnson Motor Company, at Macon, Ga., during the year 1929, "with a Ford roadster with a nickel-plated radiator shell," and with the motor number "changed or rubbed off," and that the defendant discussed trading the Ford car, but that they could not "get together," and defendant said he might come back. This witness further swore that he was present in jail when the solicitor asked the defendant if he bought some paint from T. C. Burke Company, and heard the de-

fendant say that he had not, but that Wilson had; and that witness also heard the defendant tell the solicitor that he had not bought a nickel radiator shell from Jones-Stewart Motor Company, and "did not know anything about it." W. H. Williams testified, in part, that while he was working at T. C. Burke's Incorporated on May 22, 1929, he sold the defendant "two quarts of enamel paint and two brushes," and "one and a half pint of red enamel and one brush;" that "the enamel paint and two brushes were bought first;" that the defendant said "he was going to paint a Ford roadster," and witness told him that one quart would be enough, but that defendant said "he wanted some to go underneath—wanted a high gloss;" and that when witness saw the defendant in jail afterwards he denied buying the paint. Z. L. Darden testified, in substance, that when he was in the employ of Jones-Stewart Motor Company the defendant and a "little short fellow" came to the place of business of said company, and defendant bought a "nickel-plated radiator shell" for $3.50.

Mrs. J. D. Lewis testified, that on about May 8, 1929, her dark green Ford roadster disappeared, and that when she recovered it about a month later it was changed in appearance—had "a crude black paint job on it," and a new silver-looking radiator shell, and that "the lights had globes and shades over them, round looking things sticking over the lights." C. A. Leard testified, that "in the summer of last year" the defendant came to the place of business of Adams-Buchanan Motor Company, and witness "tried out a Ford he brought there;" that the motor number of the car was so defaced that he could not tell what it was; that witness heard defendant state to the solicitor in jail that he did not buy any paint at T. C. Burke's, and heard him deny any knowledge of "a nickel-plated radiator shell;" and that on the occasion when witness tried out the Ford, Shorty Wilson was with him, and said the car belonged to the defendant. O. L. Barrentine, a deputy sheriff of Twiggs county, testified, in substance, that on May 22, 1929, he was with deputy sheriff John G. Slappy when Shorty Wilson, carrying some paint and brushes, and the defendant, carrying a package the contents of which were unknown to witness, were seen approaching a "Buick touring automobile," which was located a quarter of a mile from the public road and half a mile from defendant's home; that Wilson said the car was his, and the defendant said nothing; that

when Slappy asked Wilson what he had, he said "paint," and that when Slappy further asked him what he was going to do with the paint, Wilson said "paint the car;" and that Wilson was arrested and the paint taken from him, but that the defendant was not arrested at that time.

Robert, alias Shorty Wilson, testified, in substance, that defendant had the "Ford roadster car" two or three weeks, but that he had it only twenty-four hours before "he purchased the nickel-plated radiator shell for it;" that on the same day "we bought a black paint for the Ford," and "just smeared the paint over the old paint;" that they threw the old radiator shell away; that "the defendant also bought a motor-meter for the Ford at Sears & Roebuck's, and some lamp-shades—bright tin-like pieces which could be rolled up—the shades that hang over the lights;" that "I put those on myself," and "we both put on the radiator shell;" that "after we got the Ford fixed, the defendant and myself drove it around some together;" that defendant wanted a Buick, and induced witness to steal the automobile mentioned in the indictment; that witness and defendant went to Atlanta in "this Ford roadster, and stayed there a day or two" trying to locate a Buick automobile, but that they failed to find one they could get and returned to Macon; that on the night witness took the Buick automobile, defendant, who had parked the Ford in an alley across from where the Buick was standing, said, "Right there is the one I want, see if it is in good condition;" that when witness said that the motor was all right, defendant said, "Take it out, and I will follow you in the Ford;" that witness took the Buick to defendant's place, and "he put the Buick there in the woods where it was found;" that witness hid the Ford in the woods, and "we walked back from the Buick to the Ford," and came back to Macon that night in the Ford. Wilson further swore: "The defendant bought some paint that morning, but at a different place from where the other paint was bought. We bought that for the Buick from Burke that morning after the Buick was stolen. The defendant bought that paint and the brushes, and he tried to find a motor-meter for it, and he couldn't find one. He got some shades for it at Sears & Roebuck, the same kind as the others. The shades were done up in brown paper. . . We got to his house in the evening some time. . . We stored the Ford car back of the defendant's house, and took the

stuff and went over to the Buick car. We were fixing to paint the Buick. When we walked up where the Buick was we saw a couple of deputies. . . The defendant still had the shades in his hands, and I had the paint and brushes. . . They took me with the paint and brushes, and let the defendant go with the shades. . . The defendant and myself knocked the numbers on the Ford off and put new ones on there. We planned to change the number on the Buick. . . I was to get the Ford roadster for the Buick and $150 difference. The defendant never paid me." Wilson then testified on cross-examination that he had been guilty of many other offenses, some of them similar to the theft of the Buick automobile in the instant case.

John G. Slappy testified, that he was present when the defendant and Wilson approached the Buick automobile parked near defendant's house; that Wilson said the car was his—that he had stolen it in Macon on the previous night, and that the defendant "had nothing to do with it;" and that Wilson had some paint and a brush or two, and that the defendant had "a sort of a flat package" tied up in paper.

Numerous witnesses swore that Shorty Wilson's reputation was bad and that they would not believe him on oath.

The gist of the defendant's statement to the jury was that while he was on his way to Macon in his automobile the car began to run badly and he stopped at Dry Branch and got Shorty Wilson to work on it; that Wilson said that a spring in the machinery was broken, and defendant and Wilson went on to Macon in Wilson's car; that while in Macon Wilson induced the defendant to pay for some parts to be used on another automobile that Wilson said he was repairing for a customer; that Wilson went to a place and bought paint and brushes; that they went to Jones Motor Company, where Wilson got a "nickel-plated shell," and that Wilson also bought "a pair of light-shades and a motor-meter;" that a few days later Wilson offered to trade the Ford roadster for defendant's Buick, and that afterwards defendant purchased the roadster from Wilson; that Wilson said he got the Ford from his brother-in-law at Crosskeys; that after defendant had the Ford about three weeks, Wilson came to defendant's house and persuaded him to carry Wilson to Macon; that while in Macon Wilson bought brushes and paint, and that when they reached Dry Branch Wilson said he would

go on home with defendant and return in "Mr. Cannon's lumber truck;" that when they were in about three quarters of a mile of defendant's home, defendant saw where a truck had turned into "one of Mr. Cannon's sawmill roads," and that, fearing that the driver of the truck had gone for a load of wood and left the fence down and turned cattle in on defendant's crop, defendant and Wilson went to defendant's house and left the automobile there, and started out afoot to see about the pasture fence, Wilson having "a turn of bundles in his arm;" that when defendant "got close to the gap where people had been letting the fence down," they came up on Messrs. Barrentine and Slappy and a Buick automobile; that when the officers asked whose car it was, Wilson said it was his—that he "stole it over in Macon;" that defendant never went to Atlanta with Wilson to look for an automobile; that he purchased the Ford automobile in good faith from Wilson; and that he knew nothing about the theft of either the Ford or the Buick automobile.

■ "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases, such as to convict of treason or perjury, and in any case of felony where the only witness is an accomplice; in these cases (except treason) corroborating circumstances may dispense with another witness." Penal Code (1910), § 1017. "To warrant a conviction of a felony upon the corroborated testimony of an accomplice, the corroborating evidence need not be in and of itself so strong as to support a verdict of guilty, but it must be sufficient to connect the accused with the perpetration of the offense and lead to the inference of guilt, and more than sufficient to raise a suspicion against him." *Chapman* v. *State*, 112 *Ga*. 56 (2) (37 S. E. 102). "The jury are not authorized to convict upon the uncorroborated testimony of an accomplice. What shall be the extent of this corroboration is a question to be determined by the jury. It may be strong, or it may be slight; but in each case it must be of such character as to satisfy the minds of the jury as to the connection of the accused with the criminal enterprise." *Rawlins* v. *State*, 124 *Ga*. 31, 49 (52 S. E. 1). "To authorize a conviction based on the testimony of an accomplice, the corroborating circumstances should independently connect the defendant with the offense, and should raise an inference of guilt independently of the testimony of the accomplice." *Lynch* v. *State*, 158 *Ga*. 261. We quote further

from the decision in the *Lynch* case: "It is well settled that corroboration as to time, place, and circumstances will not alone suffice. . . . However, if legal corroboration exists, it is solely within the province of the jury to determine whether the circumstances relied upon afford a sufficient support of the testimony of the accomplice to show the defendant's guilt beyond a reasonable doubt. And in case of a conflict in testimony tending to establish or disprove the existence of corroborative circumstances (as in other disputed issues of fact) the jury is to determine the credibility of the witnesses." We quote next from *Brown* v. *State,* 18 *Ga. App.* 288 (89 S. E. 342). "Slight evidence that the crime was committed by the defendant will corroborate the testimony of an accomplice and warrant a conviction. *Evans* v. *State,* 78 *Ga.* 351; *Roberts* v. *State,* 55 *Ga.* 220 (3). (*a*) While the judge should not charge the jury, as matter of law, that slight evidence is sufficient to corroborate the testimony of an accomplice (*Chapman* v. *State,* 109 *Ga.* 164 (34 S. E. 369), yet as a matter of fact slight evidence is sufficient, if it is satisfactory to the minds of the jury. *Rawlins* v. *State,* 124 *Ga.* 31, 49 (52 S. E. 1). The sufficiency of the corroboration is a question solely for the jury. *Sikes* v. *State,* 105 *Ga.* 592 (3), 594 (31 S. E. 567); *Rawlins* v. *State,* supra."

Applying the foregoing rules of law to the facts of this case, we are satisfied that the testimony of the accomplice was legally corroborated, and that the evidence supports the verdict. Therefore we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ It appears from special ground 1 that it was sought first to put the defendant on trial on an indictment containing two counts, the first charging the larceny of Mrs. J. D. Lewis's Ford automobile, and the second charging the larceny of J. P. Myddleton's Buick automobile; that the court struck this indictment for misjoinder of causes of action; that the solicitor-general then announced that he would try the defendant under an old indictment, which was the indictment in the present case and which involved the same transaction set out in the second count of the indictment first mentioned; that the defendant then announced that he could not go safely to trial for the reason that the second case was not on the calendar for trial and that he was not prepared for trial; and that the court refused either to continue the case or to give

the defendant further time to prepare for trial. The indictment on which the defendant was tried had been procured several months before, and we see no error in the court's ruling that the defendant had to go on trial without delay. *Irwin* v. *State,* 117 *Ga.* 706 (45 S. E. 48) ; *Harris* v. *State,* 11 *Ga. App.* 137 (2), 140 (74 S. E. 895).

Special grounds 2 to 12, inclusive, all bear upon the proposition that the court erred in allowing testimony in regard to the larceny and the disguising of the Ford automobile of Mrs. J. D. Lewis, except ground 4, which complains that the court refused to declare a mistrial upon the ground that the solicitor-general stated to the jury that "he expected to prove the Ford car was Mrs. Lewis's car."

We quote a part of the court's note to special ground 2 : "The State was not permitted to introduce any evidence that the Ford automobile of Mrs. J. D. Lewis had been stolen, nor was the counsel for the State at any stage of the trial permitted to state to the jury that this automobile had been stolen. Evidence was admitted that the Ford roadster, . . the property of Mrs. Lewis, had been in the possession of the defendant Frank Sheppard and the co-defendant Robert Wilson, alias Shorty Wilson, and that they had put black paint on the original green enamel of this automobile, and had put a nickel-plated radiator shell on the automobile in the place of a black enamel radiator shell, and that they had put blinds or shades over the lights of the automobile, and that the motor number on the automobile had been altered. This evidence was admitted on the idea that it tended to show the same plan and design as the State contended was manifest in the stealing of the Buick car, which was the offense for which the defendant was then on trial."

In this connection, we quote also from the charge of the court to the jury: "Now, the charge in this case is the larceny of a Buick automobile. You will not consider any evidence in this case as tending to prove this defendant guilty of stealing a Ford automobile. That evidence is ruled out in so far as the circumstances of the case point directly towards his guilt of the offense charged here. You are not trying him for stealing a Ford automobile, and you will not consider any evidence as to his guilt, or, if he had anything to do with the Ford automobile at all, you will not pre-

sume he had any guilty connection with it, because that is not permitted in the case. You try whether or not this defendant is guilty or participated in the guilt of the taking of the Buick automobile."

Frankly, under the evidence in this case, we doubt if anything said or done by the court could have had the effect of causing the jury to separate the defendant from the larceny of the Ford. Indeed, all the testimony as to the defendant's participation in buying articles which were used in disguising the Ford automobile, and of his active part in painting the car black, would be of little weight in the case sub judice if the defendant had no part in the larceny of that automobile.

We are aware of the fact that there are well-defined general rules for determining when evidence of other transactions than the one for which a defendant is being tried is admissible. However, if there be any doubt that the application of these rules to the different facts that may arise is difficult, it will be dispelled by an inspection of the decisions of the appellate courts of this State and other states. Our opinion is that in the case at bar the Ford transaction is so interlocked in motive, plan, scheme, and design with the offense under investigation that the testimony in regard to the Ford automobile was admissible. See *Jones* v. *State,* 41 *Ga. App.* 277 (152 S. E. 591) ; *Ealey* v. *State,* 40 *Ga. App.* 727 (151 S. E. 400) ; *Terry* v. *State,* 36 *Ga. App.* 304 (136 S. E. 476) ; *Hayes* v. *State,* 36 *Ga. App.* 668 (137 S. E. 860) ; *Lee* v. *State,* 8 *Ga. App.* 413 (69 S. E. 310) ; *Martin* v. *State,* 10 *Ga. App.* 795 (74 S. E. 304). Perhaps the most complete discussion of the question under consideration by a Georgia court is to be found in the case of *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016). See also *Green* v. *State,* 172 *Ga.* 635, 640 (158 S. E. 285), where Chief Justice Russell, speaking for the court, said : "That the statements made were, in one sense, most prejudicial, can not be questioned. But, by gradual evolution, the rule that the character of a defendant in a criminal case can not be put in issue or attacked has been gradually chiseled away and finally located in the shadow of other principles, the application of which has been deemed necessary for the enforcement of the criminal laws; and while the principle still lives in theory as a memory of the past, it is of little practical effect in the actual trial of cases. As to the statement of counsel to the jury of their position and con-

tentions, the law is of course as it ever was—that they can only state that they expect to prove what can be proved according to the rules of law. The change which has been effected is that testimony as to other transactions disconnected with that with which the defendant stands charged in the indictment, in both time and circumstance, may be used to show motive, scheme, or plan, and indeed the very nature or animus of the defendant when necessary either to identify and fix the offense upon him, or indeed to disclose the intent with which the accused acted, if there be doubt as to the intent with which the crime was committed." The foregoing quotation is especially applicable to the complaint in many of the special grounds that the defendant's character was put in issue, and to special ground 4, supra. We hold that none of the grounds under consideration here disclose any cause for a reversal.

■ Ground 13 invokes a new trial because the court refused to declare a mistrial when the solicitor-general used the word "lie" several times in connection with the defendant. The court's ruling was: "I will overrule the objection; the language is rather strong, but the court can not control it." It is unquestionably true that the defendant's statement was contradicted in material parts by the evidence in the case, and of course the solicitor-general had the right to argue that this statement was untrue. While he could have done this in milder language, we do not think that the language used warranted the grant of a mistrial.

It appears, from what has already been said, that, in our opinion, the court did not commit reversible error in refusing to declare a mistrial because the solicitor in his argument referred to the fact that the Ford automobile was found in defendant's yard, and that the motor number had been removed therefrom.

■ The trial judge, in making the ruling stated above, said: "I will charge the jury they will not consider any question of Sheppard's guilt of the larceny of the Ford car, and anything that may connect him with that they will disregard." It is insisted that in this ruling the court expressed his opinion that Sheppard was guilty of stealing the Ford automobile. We do not think that this contention is meritorious, and we hold that the trial judge did not err in overruling special ground 14.

■ It appears from special ground 15 that the trial judge overruled the motion of counsel for the defendant to declare a mistrial

because the solicitor-general used the following language in his argument to the jury: "Defendant's counsel want to know why I kept Shorty Wilson in jail for about a year when he admits his guilt. It is because I think Sheppard is the man higher up. I think if Sheppard goes free, Shorty Wilson ought also be set free, and ought not to serve a day. . . I have waited to see what punishment was given Sheppard, so that Wilson could be treated the same way." It is insisted that this "argument was a menace and threat to the jury that if they acquitted defendant, the solicitor thought Wilson should also be freed." The ancient rule that argument should be supported by evidence is as binding now as it ever was, and surely counsel for the State in criminal cases should follow that salutary doctrine. Still, in the present instance, we do not think that the court abused its discretion in holding that a mistrial was not warranted for the reason assigned. Moreover, it appears from the ground itself that counsel for defendant invited the argument of the solicitor. We hold that this ground does not disclose reversible error.

■ Ground 16 complains that in giving the following charge to the jury the court several times intimated an opinion as to what had been proved: "Now, in this case, this same witness who is sought to be impeached [referring to State's witness Shorty Wilson] testified against the defendant. The general rule is that the testimony of an accomplice is not sufficient to authorize one charged with a felony to convict one charged with a felony. That is the general rule. If a witness participated in the crime charged against the defendant, if he assisted in the commission of it, that is, the witness himself took any part in the crime, then such a witness would be an accomplice as to any other person who may have been implicated in the crime, and a defendant can not be properly convicted on the unsupported testimony of such a witness." It is insisted that in using the expression, "sought to be impeached," the court intimated an opinion that "Wilson had not been successfully impeached." The defense certainly "sought to impeach" Wilson by an array of witnesses, and the court expressed no opinion either that the witness had or had not been impeached. It is next insisted that "the court intimated an opinion that the testimony of Wilson was against the defendant, intimating an opinion that Wilson testified to facts against defendant showing his guilt." Ob-

viously this contention is not meritorious. It is also insisted that the court expressed an opinion that "a crime had been committed." And, lastly, it is urged that this charge "expressed an opinion that, as a matter of law, defendant and . . Wilson were accomplices, and this could not be true unless Wilson and movant had engaged in the same criminal act, and thus the court intimated that defendant was concerned in a crime." Several of the foregoing criticisms of the charge are hypercritical, and none of them discloses reversible error. However, since many of the assignments of error are similar to the one we are now considering, we shall here state the following general and accredited rule, taken from *Yarborough* v. *State,* 86 *Ga.* 396 (2) (12 S. E. 650): "To declare the law applicable to a given state of facts is no expression or intimation of opinion as to whether any of the facts referred to do or do not exist in the case on trial." In the body of this decision, Chief Justice Bleckley, speaking for the court, pertinently says: "No proposition of law can be laid down without some implication of a state of facts as by possibility existing." To the same effect is *Densley* v. *State,* 24 *Ga. App.* 136 (2) (99 S. E. 895).

It is averred in ground 16-1/2 that in charging the law relating to the testimony of an accomplice, the trial judge in several instances expressed his opinion as to what had been proved. This ground covers five pages, and presents no question that needs detailed discussion. We shall content ourselves with stating that, under the general rule announced in *Yarborough* v. *State,* supra, this ground discloses no reversible error.

The gist of ground 17 is that in charging the jury that "the only way a jury can try a case is according to the evidence adduced before them" the court eliminated "the defendant's statement, the lack of evidence, and the uncertainty and unreliability of any testimony which the jury might also have considered in arriving at a verdict." "The court having instructed the jury the law as to the prisoner's statement, it was not necessary to charge them that they should look to his statement in connection with the testimony, in passing upon his guilt or innocence." *Brooks* v. *State,* 19 *Ga. App.* 45 (3) (90 S. E. 971). In this connection see *Vaughn* v. *State,* 88 *Ga.* 731 (2) (16 S. E. 64), where the court, speaking through Chief Justice Bleckley, laid down the principles governing instructions upon a defendant's statement. See also *Hoxie* v. *State,* 114

494

*Ga.* 19 (7), 24 (39 S. E. 944). Of course, a judge can not charge all the law of the case in one breath; and, viewing the charge as a whole, the court did not err in overruling this ground for any reason insisted upon.

■ In order to conserve time and space, we will consider grounds 18 and 23-1/2 together. The latter ground complains that the court failed, without request, to charge the following portion of Penal Code (1910), § 1036: "In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case." The ground recites that the only charge in regard to the defendant's statement was as follows: "The defendant has made a statement. This statement is not made under oath, but it is the duty of the jury to consider the statement and give it such weight as they think it is entitled to have as pointing to the truth of the case; the jury may believe the statement or not according to the credibility they attach to the statement. If they think the statement is more credible than the evidence, you will adopt the statement." The principal contention in both grounds is that "it was prejudicial to movant for the court to fail to charge them they could believe the statement in preference to the sworn testimony as provided by our law." It is further insisted that under the charge given the defendant had the burden "of convincing the jury, not only that his statement was credible, but was more credible than the evidence."

"While it is much the better practice to charge concerning the prisoner's statement in the language of the statute, failure to do so is not cause for a new trial when the substance of the law is correctly stated." *Pitts* v. *State,* 114 *Ga.* 35 (3) (39 S. E. 873). It has many times been emphasized that it is much the better practice for trial judges in charging upon a defendant's statement to confine themselves to the language of the statute. See *Ozburn* v. *State,* 87 *Ga.* 173, 185 (13 S. E. 247); *Brundage* v. *State,* 7 *Ga. App.* 726, 728 (67 S. E. 1051). It is also true that it is error for the trial judge in charging upon the defendant's statement to fail to express to them the idea that they may believe the defendant's statement in preference to the sworn testimony in the case. *Fields* v.

*State,* 2 *Ga. App.* 41 (4) (58 S. E. 327). Of course it is reversible error for the court so to charge the law as to deny the jury's right to believe such statement in preference to the sworn testimony in the case. *Rouse* v. *State,* 135 *Ga.* 227 (3) (69 S. E. 180) ; *Edenfield* v. *State,* 27 *Ga. App.* 291 (108 S. E. 124). "But it does not necessarily follow that an instruction upon the subject of the statement is erroneous because the exact language of the code section is not quoted verbatim." *Brundage* v. *State,* supra. In the case at bar the court did charge the jury that they should adopt the defendant's statement if they believed it to be more credible than the evidence. Our opinion is that this charge would express to the average layman the idea that the defendant's statement might be believed in preference to the sworn testimony in the case. We are further of the opinion that for no reason assigned in either of the grounds under consideration did the trial judge err in refusing to grant a new trial.

█ In ground 19 it is insisted that the following charge deprived the defendant of the right of having the jury consider his statement: "You consider the entire case, and if you think the evidence shows beyond all reasonable doubt he is guilty it would be your duty to find a verdict of guilty." This ground is not meritorious. See the authorities cited in our discussion of special ground 17, supra.

█ It appears from ground 20 that in charging the jury the law relating to the impeachment of a witness by proof of bad character the court said: "Now, the rule as to that is this: of course you will consider all the evidence in the case, and you will consider the evidence as to the witness's bad character, and if you should believe beyond a reasonable doubt, after you hear all the evidence, this witness is unworthy of belief, then he would be successfully impeached, and it would be your duty to discard his testimony entirely, if you conclude he is unworthy of belief, except so far as his testimony is corroborated by other facts and circumstances in the case."

That part of the charge to the effect that the jury should believe beyond a reasonable doubt that the witness was unworthy of belief was unquestionably erroneous. Was it reversible error? We quote as follows from the court's note to ground 20: "The witness referred to . . is Robert Wilson, alias Shorty Wilson, who was jointly indicted with the movant in this case. . . The solicitor-

general more than once in the argument of the case to the jury conceded that this witness had been impeached by proof of bad character as thoroughly as ever a witness could be so impeached. The solicitor-general told the jury that the witness was a moral and physical degenerate, and that the State would not ask the jury to believe the witness, except in so far as he was corroborated by other witnesses and by the circumstances before the jury, including the witness's manner of testifying." In the light of the court's note, we do not think that the error under consideration could have been harmful to the defendant.

Another complaint made in this ground is that "it was error to limit the jury to a consideration of the evidence alone in determining what witness they would believe, or whether a witness had been successfully impeached." Still another criticism is that the court erred in instructing the jury that "if a witness was successfully impeached his testimony should be disregarded altogether except so far as his testimony was corroborated by other facts and circumstances in the case." It is also insisted that the court committed error by "intimating an opinion that the impeachment was not successful." Again, it is contended that the charge was erroneous "because the court . . limited his charge to one method of impeachment;" that is, failed to charge upon impeachment by crimes involving moral turpitude or by proof of contradictory statements. It is also averred that the court erred "in instructing the jury they might believe the witness who is being impeached in preference to the witnesses who impeach him."

To discuss the various criticisms of the charge seriatim would lengthen this decision beyond all reason. Some of the strictures upon the charge are obviously without merit, and none of them, in our opinion warrants a reversal of the case. Suffice it to say that the charge is in line with the following well-seasoned and well-reasoned cases: *Powell* v. *State,* 101 *Ga.* 9 (5) (29 S. E. 309, 65 Am. St. R. 277); *Huff* v. *State,* 104 *Ga.* 521 (2), 523 (30 S. E. 808); *Smith* v. *State,* 109 *Ga.* 479 (2) (35 S. E. 59); *Holston* v. *So. Ry. Co.,* 116 *Ga.* 656, 661 (43 S. E. 29); *Elliot* v. *State,* 138 *Ga.* 23 (2), 25 (74 S. E. 691); *Landers* v. *State,* 149 *Ga.* 482 (100 S. E. 569). As pertinent to this ground, we quote from *Roberson* v. *State,* 4 *Ga. App.* 833 (62 S. E. 539): "The court should instruct the jury as to all the methods by which a witness may be im-

peached, so far as such instructions are authorized by the evidence; but failure to do so will not require the granting of a new trial, where no written request was made to charge the jury as to the mode of impeachment omitted from the instructions on that subject." To the same effect is *Millen & Southwestern R. Co.* v. *Allen,* 130 *Ga.* 656 (61 S. E. 541). See also *Webb* v. *State,* 140 *Ga.* 779 (79 S. E. 1126). We hold that ground 20 discloses no reversible error.

13. In ground 21 complaint is made of the following charge of the court: "It is your duty to see how far the accomplice's testimony is corroborated, and how far it involves the defendant, and how far it connects the defendant with the crime. Does it connect the defendant sufficiently with the crime that you are satisfied beyond a reasonable doubt he is guilty, when it is considered in connection with the testimony of the accomplice, that is, the person claimed to be an accomplice, to wit, Shorty Wilson?" The contention that the foregoing charge was an erroneous expression of the court's opinion that a crime had been proved is not meritorious. Neither is the contention that in this charge the court expressed an opinion in other designated particulars sound. Furthermore, we do not think that the quoted excerpt from the charge is inherently erroneous for any reason assigned. See authorities cited in our discussion of the general grounds of the motion for a new trial.

14. Ground 22 complains of the charge of the court in regard to the larceny of the Ford automobile. Having, in our discussion of special grounds 2 to 12, inclusive, quoted precisely the excerpt complained of, we shall content ourselves with stating here that the charge was not subject to the criticism that it was an expression of the court's opinion in any particular suggested in this ground.

15. Ground 23 complains that in several respects an opinion as to what had been proved was expressed by the court in charging as follows: "If this defendant was implicated in any way in a common purpose to steal the Buick automobile, if he was present, either actually or constructively present, if he was consulted about it and had a part in the common purpose to steal it, then he would be guilty under this charge." Considering the excerpt quoted in connection with the remainder of the court's instructions upon the subject in question, we hold that it was not erroneous for any reason assigned.

Ground 23-1/2 has hereinbefore been passed upon.

Ground 24 is quite similar to ground 23, and we hold that it discloses no reversible error for any reason assigned.

16. Ground 25 complains of a long excerpt from the charge of the court upon the law applicable to an accomplice's testimony. Having already discussed that subject at some length in passing upon the general grounds of the motion for a new trial, we shall merely state here that in our opinion the charge comports with the law and is not erroneous.

17. In ground 26 it is averred that the court erred in refusing to allow a witness to testify that Shorty Wilson had committed a particular theft. This ground is not meritorious. Furthermore, it appears from the record that the witness Wilson actually admitted much more in this regard than the defense could prove.

18. Ground 27 complains of the refusal of the court to give the following requested charge: "To warrant the conviction of this defendant on the testimony of Shorty Wilson, there must be corroborating circumstances, which in themselves and independently of the testimony of Wilson, directly connect the defendant with the crime of stealing the Buick car here in Macon, alleged to have been stolen, or lead to the inference that this defendant stole the car, or was concerned in stealing it in Bibb county." In our opinion, the charge given by the court upon the subject in question substantially covers the requested charge, and there is no merit in this ground.

19. It is insisted in ground 28 that the court erred in refusing to charge the jury in this language: "If evidence other than the accomplice's testimony raises only a suspicion of guilt, then the defendant should be acquitted, the law requiring that guilt be established beyond a reasonable doubt, and you are not authorized to convict on suspicion." The charge given by the court covers the principle of law announced in the requested charge, and was perhaps better expressed. This ground is not meritorious.

20. Ground 29 complains that the trial judge committed error in refusing to charge to the effect that the defendant could not be convicted unless he was actually present at the time when and place where the Buick automobile was stolen by Shorty Wilson. We shall not quote the entire request. It may not be amiss, however, to say that it apparently deals with section 42 of the Penal Code (1910), which defines principals in the first and second degree,

but effectually eliminates "constructive presence." Our opinion is that the requested charge is not a correct statement of law, and that the court properly refused to give it.

21. The last special ground, numbered 30, complains that the court admitted in evidence portions of a statement the defendant made to the jury on his trial for the larceny of the Ford automobile of Mrs. Lewis, the statement being designed to contradict the defendant's statement in the case at bar. The statement introduced is quite similar to the one made by the defendant in the case under consideration. We have read it carefully, and hold that its introduction in evidence is not cause for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*