1. Although the evidence might authorize a different verdict, where there is enough to support the verdict found, the judgment of the trial court refusing a new trial on the general grounds will not be disturbed. See Code (Ann.), § 70-202, and catchwords "Any evidence."
2. (a) The trial judge has discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will *Page 484 
not be controlled unless it is abused. See Rogers v. State, 18 Ga. App. 332 (89 S.E. 460); Fields v. State, 46 Ga. App. 287 (3) (167 S.E. 337).
(b) The right of a defendant to a thorough and sifting cross-examination of a witness called against him does not authorize his counsel, on cross-examination, to elicit irrelevant facts. See Hyde v. State, 70 Ga. App. 824
(29 S.E. 820).
3. Proof of other crimes, independent of the offense for which a defendant is on trial, is generally not admissible. See Chambers v. State, 76 Ga. App. 269 (45 S.E.2d 724); Lee v. State, 8 Ga. App. 413 (69 S.E. 310); Nesbit v. State, 125 Ga. 51 (54 S.E. 195). The exceptions to this general rule are where proof of other crimes is admitted for the purpose of showing knowledge, or where the crime is committed by the employment of some particular scheme, device, or artifice, and the similarity of it with the crime for which the defendant is on trial tends to show identity. See Cawthon v. State, 119 Ga. 395 (46 S.E. 897); Farmer
v. State, 100 Ga. 41 (28 S.E. 26).
 DECIDED FEBRUARY 16, 1948.
Bill Wright was indicted at the August term, 1947, of the Superior Court of Walton County, for selling distilled, spirituous, and alcoholic liquors and beverages which did not bear the tax stamps required by law. To this indictment the defendant entered a plea of not guilty, and at the same term was convicted of the offense.
The jury was authorized to find from the testimony of L. M. Howard and C. J. Sorrells substantially the following facts: L. M. Howard and C. J. Sorrells, officers of Walton County, on May 16, 1947, received a report concerning Bill Wright, and on receiving the report went to the house of Bill Wright in company with Mr. Gordon, and made a search of the premises. It was late in the afternoon, before sundown, when the officers arrived at Bill's house. Upon searching the premises, they did not find any whisky, but found a lot of empty vessels and a lot of travel leading to the house from the main road. The officers searched the house and premises for about an hour and, not finding any whisky, left. They later came back and parked their car about 100 yards from the house. It was dark at the time. They had waited about 30 minutes when a car came to Bill's house. The car drove to Bill's and the officers could hear them talking, and L. M. Howard heard Bill say to one of the boys in the automobile, "You boys come back to see me." The car then left Bill's *Page 485 
house, where it was stopped by the officers. When the officers threw the lights on the car, the occupants began to throw liquor out of the car. Charlie Elder, Charlie Ash, and a boy named Sifold were in the car. The liquor that was thrown out of the car was non-tax-paid liquor. The officers held the boys and went directly to Bill Wright's house, and searched for him, but did not see him until several days later. When the officers first searched the premises, they found empty fruit jars, and found holes back of Bill Wright's house where something had been hidden; the holes looked as if they had been dug with post-hole diggers; there were several holes about the size of a half-gallon fruit jar.
Charlie Elder and Charlie Ash testified for the State substantially as follows: They remembered the day that Mr. Howard and Mr. Sorrells and Mr. Gordon stopped them while they were coming from Bill Wright's house and had some liquor with them. They entered a plea for having the liquor in their car; they were in Sifold's car; they had a half a gallon of liquor each; but the Sifold boy did not have any. They got the liquor at Bill's house, bought it from Bill, and paid him $6.50 for it. It was white liquor. They did not see anybody but Bill at his house; and they did not pay attention where the liquor came from. Bill Wright (indicating defendant) is the same Bill Wright that they got the liquor from. Wright delivered the whisky to the witnesses at the well. Each witness paid Bill Wright $6.50 for each half-gallon fruit jar of liquor.
R. L. Jay testified for the defendant as to the directions of the roads leading by Bill's house, and testified that the pasture fences back of Bill's house were changed in March; and that in changing the pasture fences the posts were dug up, thus accounting for some of the holes dug in the pasture back of Bill Wright's house. The witness could not say that the holes testified about in this case were dug for fence posts.
Marie Brooks testified for the defendant substantially as follows: She stayed in the house with Bill Wright and was his first cousin. She did his cooking and helped him work in the fields. At the time Wright was accused of selling whisky to Charlie Elder and Charlie Ash, the witness was there when the officers came. She did not see but two officers in the house, and did not see any liquor there; and they did not find any liquor. Bill Wright was *Page 486 
not there when the officers first came, but later came to the house before they left. The second time they came to the house Bill was not there. The witness saw Charlie Elder and Charlie Ash and the Sifold boy when they drove up in the yard. The boys asked where Bill Wright was, and the witness told them that he was not there and had gone about a half hour ago. When the officers came back the second time, Bill had been gone about a half hour, and the witness did not know which way he went; she knows that he left because he was not there.
The defendant's statement to the jury was substantially as follows: When the car came down there, he was in town; he went after some barbecue, and when he came back they were searching. The first men he saw were Mr. Lewis and Mr. Dock, a little before he got to the house. He got off the truck and had barbecue meat in a sack, and they allowed him to take it out and let them look at it, and they stayed a few minutes and left. The officers searched before he got there. Directly after they left, he left and went back to town and did not come back until very late. When he came back, a lady told him that Charlie Elder and the Sifold boy and "them" had been there. They came and asked was he at home, and the lady told them "No," and he said, "They might have had a drink to give me." That is the only thing he thought of. So far as getting any liquor from him, they did not get any. If they had, he would acknowledge it. If he had had any liquor, he would not have given it to them, as he could not tell whether the officers were hiding around the place that night or not.
The defendant filed a motion for a new trial on the general grounds, later amending the motion by adding two special grounds.
Special ground 1 contends: that the court committed error in not allowing the defendant's counsel to cross-examine Charlie Elder, a witness for the State, as to a transaction about a week prior to the trial, when the witness was seen, at a point where you turn into the road that goes to Bill Wright's house, with a half a gallon of liquor, for the reason that the defendant had a right to make a searching test of the intelligence, memory, accuracy, and veracity of the State's witness, which was refused the defendant by the court; that the purpose of the cross-examination was to impeach the witness, and that said testimony was material; because *Page 487 
the defendant was not granted sufficient latitude in cross-examining the witness; and for the further reason that he was denied the right to cross-examine the witness with reference to any other occasion when the witness had liquor in the proximity of the defendant's house.
Special ground 2 contends that the court committed error in admitting into evidence, over the objections of the defendant, a certified copy of an accusation in Walton Superior Court, charging Bill Wright with a misdemeanor for having whisky on August 3, 1946, and a plea of guilty by Wright, and a certified copy of a sentence on said accusation and plea of guilty, sentencing Wright to serve six months in the work camp of Walton County on probation, and to pay a fine of $75, the sentence being dated August 7, 1946; for the reason that the evidence was immaterial, prejudicial, and harmful to the defendant, in that it put the character of the defendant in issue; that said evidence was proof of another and distinct crime, and was not admissible in the trial of the present case.
Exceptions are taken to the overruling of the amended motion for a new trial.
1. The first headnote requires no elaboration. The evidence amply authorized the verdict, and the general grounds of the motion for new trial are without merit.
2. Although the right to a thorough and sifting cross-examination is guaranteed every party as to the witnesses called against him, yet, as was said in Hyde v. State,70 Ga. App. 824 (29 S.E.2d 820), "The right of a defendant to a thorough and sifting cross-examination of a witness called against him does not authorize his counsel on cross-examination to elicit irrelevant facts." The trial court in denying to counsel for the defendant the right to further cross-examine the witness, Charlie Elder, regarding the half gallon of whisky he had in his possession near the home of the defendant on some occasion previous to the one now under investigation, held that cross-examination to be about irrelevant facts. We can not see where this line of cross-examination could have resulted in material benefit to the defendant. The trial *Page 488 
judge has discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled unless it is abused. See Rogers v. State,18 Ga. App. 332, and Fields v. State, 46 Ga. App. 287 (3) (supra). We can not agree with counsel for the defendant that the trial judge abused this discretion in the instant case.
3. The accusation charging the defendant with having and possessing whisky, the plea of guilty and the sentence of the court, complained of in ground 2 of the amended motion for new trial is unaccompanied by any evidence in the record showing how or under what circumstance the defendant previously possessed whisky. The decision herein is controlled by the decision of this court in Palmer v. State, 75 Ga. App. 789 (44 S.E.2d 567), and reference is made to that case for the reasons upon which the reversal of this case is predicated. Proof of other crimes, independent of this case is predicated. Proof of other crimes, independent of the offense for which a defendant is on trial, is generally not admissible. See Chambers v. State,
supra; Lee v. State, 8 Ga. App. 413 (1); Nesbit v.State, 125 Ga. 51 (supra). The exceptions to this general rule are where proof of other crimes is admitted for the purpose of showing knowledge, or where the crime is committed by the employment of some particular scheme, or device, or artifice, and the similarity of it with the crime for which the defendant is on trial tends to show identity. See Cawthon v. State, 119 Ga. 395
(46 S.E. 897); Farmer v. State, 100 Ga. 41
(28 S.E. 26).
The judgment of the trial court overruling the defendant's motion for new trial as amended is error as to special ground 2 thereof.
Judgment reversed. MacIntyre, P. J., and Gardner, J.,concur.