33212, 33213.   WILLIAMS *v.* THE STATE (two cases).

DECIDED FEBRUARY 7, 1951.

*Robert B. Williamson,* for plaintiff in error.

*Joe L. Houston, Solicitor,* contra.

MacINTYRE, P. J. 1. " 'While it is much the better practice to charge concerning the prisoner's statement in the language of the statute, failure to do so is not cause for a new trial when the substance of the law is correctly stated.' *Pitts* v. *State,* 114 *Ga.* 35 (3) (39 S. E. 873). It has many times been emphasized that it is much the better practice for trial judges in charging upon a defendant's statement to confine themselves to the language of the statute. See *Ozburn* v. *State,* 87 *Ga.* 173, 185 (13 S. E. 247); *Brundage* v. *State,* 7 *Ga. App.* 726, 728 (67 S. E. 1051). It is also true that it is error for the trial judge in charging the jury upon the defendant's statement to fail to express to them the idea that they may believe the defendant's statement in preference to the sworn testimony in the case. *Fields* v. *State,* 2 *Ga. App.* 41 (4) (58 S. E. 327). Of course it is reversible error for the court so to charge the law as to deny the jury's right to believe such statement in preference to the sworn testimony in the case. *Rouse* v. *State,* 135 *Ga.* 227 (3) (69 S. E. 180); *Edenfield* v. *State,* 27 *Ga. App.* 291 (108 S. E. 124). 'But it does not necessarily follow that an instruction upon the subject of the statement is erroneous because the exact language of the Code section is not quoted verbatim.' *Brundage* v. *State,* supra." *Sheppard* v. *State,* 44 *Ga. App.* 481, 494 (162 S. E. 413). In the present case the court charged the jury in the following language as to the defendant's statement: "I give you in charge further, Gentlemen, that in all criminal cases the defendant has

the right to make such statement in his own behalf as he sees fit. It is not under oath and the defendant in criminal cases, under our law, is not subject to cross-examination—the statement is made freely and voluntarily upon his part. It is the province of the jury to give such weight and credit to the defendant's statement as they see fit—they may believe it all or reject it all—they may believe it in part and reject it in part—it is for. the jury to say what weight and credit you will give to the statement of the defendant; and to what extent the same may be considered in arriving at a conclusion in the case." Even more so than the language used and approved by the Supreme Court in *Key* v. *State,* 177 *Ga.* 329, 334 (170 S. E. 230), which was very similar to that in the present case, the language used by the trial court in his charge in this case was tantamount to instructing the jury that it might "believe the defendant's statement in preference to the sworn testimony." Consequently, special ground 4 of the amended motion for a new trial is not meritorious.

2. In special ground 5, it is contended that the court erred in failing to charge the jury relative to the sufficiency of circumstantial evidence authorizing a conviction in a criminal case, as set forth in Code § 38-109: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." In the absence of any request so to do, the court did not err in failing to charge on the law of circumstantial evidence. There was direct evidence on all the essential elements of the offenses for which the defendant was tried; namely, the sale of whisky in Worth County, and the possession of non-tax-paid whisky. B. L. Pritchard, deputy sheriff of Worth County, testified that he arrested Joe Taylor for having non-tax-paid liquor, and Joe Taylor testified that he purchased the whisky, which he had when he was arrested, from the defendant. Taylor repeatedly, on direct and cross-examination, positively stated that he had purchased the five gallons of whisky from the defendant. *Wright* v. *State,* 184 *Ga.* 62, 65 (190 S. E. 663); *McElroy* v. *State,* 125 *Ga.* 37 (53 S. E. 759); *Wilson* v. *State,* 152 *Ga.* 337 (110 S. E. 8); *Haden* v. *State,* 176 *Ga.* 304 (17), 312 (168 S. E. 272); *Harris*

v. *State*, 178 *Ga.* 746 (2) (174 S. E. 240); *Starnes* v. *State*, 45 *Ga. App.* 238 (1) (164 S. E. 89). This ground is not meritorious.

3. Special grounds 6 and 7. The State on direct examination of the deputy sheriff, Pritchard, merely showed that when the defendant was arrested, he had $130 in money in his pocketbook which he claimed he had obtained in a settlement with his "boss man," but Pritchard swore that $25 of this money was marked money which he, the deputy sheriff, stated he had marked the afternoon before.

This is all that appeared relative to the marked money in the direct examination of the deputy sheriff and is, in effect, all that appears in the direct examination of the sheriff, Hudson.

The defendant on cross-examination of the deputy sheriff asked the following questions and received the following answers: "[Counsel for the defendant]: Q. Mr. Pritchard, when did you give Joe Taylor that marked money? A. I didn't give it to him. Q. How did he get it? A. I will tell the jury that I give the money to a white man and he gave it to Joe Taylor. Q. I want you to tell the jury who that white man is, and whether he is worthy of belief?" The solicitor objected to this line of questioning and the defendant on cross-examination of the sheriff asked the following questions and received the following answers: "Q. Mr. Hudson [the sheriff], who was this money given to by Mr. Pritchard after he marked it to give Joe Taylor to buy liquor with? A. Well, I would rather not say. He was a white man. When you get some good help, you don't like to give it away, and we have got to have help to catch these bootleggers. Q. You furnished this money and put it into the hands of a white man to trap this defendant? A. I would not call it trapping him—I was catching a bootlegger. Q. You knew the marked money was being furnished by your deputy to be used to purchase liquor from a man you thought was a bootlegger? A. That I knew was a bootlegger. Q. But you don't want to tell the jury who that man was? A. No, I don't." Defendant's Counsel: "We ask the court to instruct the witness to give the name of this man, for the defendant is entitled to know the name of this man." The court withheld its ruling for the time. The judge withheld his ruling on the necessity for divulging the name of the "white man" until all the evidence by

the State had been introduced, including that of the witness, Taylor, in which Taylor testified: "I got it, [meaning the marked money in question] from a white fellow that lives at Poulan—I know him—he knew what I was going to do with the money—he knew I was going to buy whisky with it. If I got to tell who I got the money from, I got it from Mr. Posey. I got that money from Leroy Posey."

The direct examination of the officers went merely to contradicting the defendant's statement to the officers at the time of his arrest that he had obtained the money, which was in his pocketbook at the time of his arrest, from his "boss man," Mr. Trammell.

The defendant on cross-examination of the two aforesaid officers seemed to want to spread out the matter which he, himself, had brought out and which was responsive to his questions and to refute what he and not the State had thus brought into the case by going into the question as to whether this white man in question was worthy of belief.

The court seems to have determined, in the exercise of his discretion, that the cross-examination had gone far enough in this matter, which had been injected into the case for the first time on cross-examination by the defendant.

If the defendant had been allowed to proceed with his cross-examination relative to the "white man" so as to determine whether or not he would be worthy of belief, it would probably have opened up for trial another and collateral issue, which was unnecessary to fairly determine the material issues in the case, and thus would have plunged the court into the trial of another and collateral issue which was raised for the first time on cross-examination, the credibility of the "white man" who had not been introduced as a witness and who the State, in effect, said they did not propose to introduce. The material issue in the case was whether the defendant sold the liquor to the witness Taylor who said that he did. *Moyers v. State*, 61 *Ga. App.* 324, 327 (6 S. E. 2d, 438); *Wright v. State*, 76 *Ga. App.* 483 (46 S. E. 2d, 516); *McNabb v. State*, 70 *Ga. App.* 798 (29 S. E. 2d, 643); *Sweat v. State*, 63 *Ga. App.* 299 (11 S. E. 2d, 40); *Aycock v. State*, 62 *Ga. App.* 812, 814 (10 S. E. 2d, 84); *Clifton v. State*, 187 *Ga.* 502 (4) (2 S. E. 2d, 102). We therefore think that the

judge did not abuse his discretion in not allowing the defendant's counsel to proceed further upon a matter raised for the first time on cross-examination.

4. From what has been said in division 2 of this opinion concerning the evidence, it is obvious that the evidence authorized the verdicts.

*Judgments affirmed. Gardner and Townsend, JJ., concur.*