*J. M. Merritt, J. G. Collins,* contra.

---

2920. MILIKEN *v.* THE STATE.

1. Declarations, though made by a person in extremis, are not admissible as dying declarations, in a homicide case, where the defendant is not on trial for killing the declarant, though the declarant may have been killed in the transaction to which the trial relates.

2. Whether a defendant who has ended his statement and come from the stand shall be permitted to return immediately and to state other matters rests in the sound discretion of the trial judge. A refusal to allow the additional statement will not be declared an abuse. of discretion, where it appears that the desired additional statement related only to matters of hearsay without relevancy to the issue.

3. It is not error for the court to permit a witness who has undertaken to give the substance of a disputed conversation to state the attendant circumstances which impressed the matter on his mind.

4. A ground of a motion for a new trial which complains that the court allowed testimony as to contradictory statements made by a witness without sufficient foundation being laid therefor, but which does not disclose what preliminary testimony, in the way of laying the foundation, was produced, is incomplete.

5. The assignments of error as to the charge of the court are without merit.

6. There is some evidence to authorize the conviction of voluntary manslaughter.

DECIDED OCTOBER 11. 1910.

REHEARING DENIED JANUARY 17, 1911.

Indictment for murder; from Appling superior court—Judge Parker. June 18, 1910.

*W. W. Bennett*, for plaintiff in error.

*A. D. Gale, solicitor-general pro tem.*, contra.

POWELL, J. Riley Miliken was indicted for murder—the homicide of John Tyre—and was convicted of voluntary manslaughter. There was a fight between the Milikens and the Tyres at a school "breaking up" (or commencement, as it is sometimes called) at Long Branch schoolhouse in Appling county. Marion Tyre and Joe Miliken were on the ground fighting with fists and brass knucks, when the defendant shot and killed John Tyre. John Tyre shot at the defendant, and also, either by accident or intention, shot and killed Louis Williams, who seems to have been taking some part (just what it seems difficult to say) in the affair. The State contended that while Marion Tyre and Joe Miliken were fighting on the ground, Riley Miliken and John Tyre came up, and before John had attempted to interfere in any way and before he had made any display of a weapon, Riley (the defendant) drew his pistol and shot him. The defendant contended that while Marion and Joe were on the ground, with Joe on top, John came up with a knife in one hand and a pistol in the other, fired one shot down at Joe, fired two other shots at the defendant, turned then and shot Louis Williams, and was firing still another shot at the defendant when the latter fired and killed him. The defendant went a step further than any of the witnesses (and there were witnesses galore), and at the close of the trial made a supplemental statement to the effect that John not only did the shooting accredited to him by the witnesses, but also cut his (the defendant's) shirt with a knife.

The defendant excepts to the refusal of the court to permit him to prove a declaration made by Louis Williams while in extremis, as to the conduct of John Tyre in the transaction—a declaration tending to exculpate the defendant and to inculpate John Tyre. "The declaration of a deceased person, which is offered in evidence as a dying declaration, is only admissible as such in case his death is the subject of an inquiry which is made because of an accusation of homicide. . . . The mere circumstance that a person's death occurred in a disturbance in which the person for whose homicide the prisoner was indicted was killed, is insufficient to admit his declaration, when it is not shown that the declarant's death was directly due to the defendant's act." Underhill, Criminal Evidence, § 106. Indeed, our Supreme Court, in *Taylor* v. *State,* 120 *Ga.* 857 (48 S. E. 361), has gone further than this, holding that "although the persons killed were shot in the same fight or difficulty, the dying declarations of the one are not, as such, admissible in evidence on the trial of the slayer for the murder of the other."

2. The defendant made his statement and retired from the stand. Before any other matter intervened, he asked to be allowed to go back and make an additional statement, his counsel informing the court that the defendant desired to tell the jury what Louis Williams had said in his dying statement. The court refused to allow him to go back for this purpose. Held, no abuse of discretion.

3. A witness was stating the substance of a disputed conversation, and in connection therewith stated the circumstances that had caused the matter to be so impressed upon his mind that he could give the substance of the conversation with assurance. The court allowed these reasons to be given, over objection of defendant's counsel as to their irrelevancy, etc. No error.

4. A great deal of the testimony was directed toward impeaching the defendant's witnesses by proof of contradictory statements made out of court. Several grounds of the motion for a new trial complain that the court erred in allowing proof of these contradictory statements without sufficient foundation being laid. The motion failed to disclose what preliminary proof was submitted. A statement as to this is essential before we can say whether the foundation was sufficiently laid or not. Hence, the assignment of

error is incomplete. Cf. *Arnold* v. *Adams,* 4 *Ga. App.* 56 (2), 57 (60 S. E. 815) ; *Kelly* v. *Kauffman Milling Co.,* 92 *Ga.* 105 (18 S. E. 363).

5, 6. The charge of the court was very fair and able. Counsel has presented many assignments of error as to it, but in general they are palpably without merit. The only troublesome questions are whether the judge should have submitted a charge on the subject of voluntary manslaughter to the jury and whether the verdict for that offense can be sustained. It is very nearly a case without a middle ground—a case either of murder or of justifiable homicide. However, after groping through the voluminous document called a brief of the evidence (and we have been reluctant to consider it at all as a brief of the evidence, on account of the surplusage in it), we have reached the conclusion that the jury was authorized to adopt a theory of the facts which would render the verdict of manslaughter legal.         *Judgment affirmed.*