# WESTBERRY *v.* THE STATE.

No. 8767.   July 14, 1932.

*Grimes & Rowe, B. L. Weston, E. K. Wilcox,* and *Copeland & Dukes,* for plaintiff in error.

*George M. Napier, attorney-general, G. C. Spurlin, solicitor-general, T. R. Gress, assistant attorney-general, L. C. Russell,* and *E. A. Stephens,* contra.

Beck, P. J.   At the November term, 1930, of the superior court of Lowndes County, the jury trying the case of the State v. Austin Westberry returned a verdict of guilty, with a recommendation.   In the indictment other defendants were jointly charged with murder, but Austin Westberry was tried alone.   A motion for a new trial was made, and to the original motion a number of grounds were added by amendment.   Upon the hearing of the motion the court overruled the same, and the defendant excepted.

A more elaborate statement of the facts in this case is contained in the report of the case of Allen Westberry, who was jointly indicted with the defendant in the instant case.   See 174 *Ga.* 174 (163 S. E. 729).   Repetition here of that statement is unnecessary.

■ In the fourth ground of the motion for a new trial error is assigned upon the admission in evidence, over objection of counsel for the defendant, of the following evidence: "She [Mrs. Betty Browning] stated that she and her husband were sitting down playing cards and that somebody shot her husband, and when she saw he was shot she jumped up and ran into the room to get a gun and as she was going through the door they shot her in the back and she fell across the bed, and he came in there and shot her where she was lying on the bed. I then asked her did she see him, and she said, 'Yes.' I said, 'What did he look like?' and she said he was a man about my size, maybe not as tall, but stouter, and had on overalls and a work shirt." W. H. Browning, with the murder of whom this defendant was charged, and his wife, Mrs. Betty Browning, were both murdered at the same time. The evidence just quoted, and which was objected to, was introduced as a dying declaration of Mrs. Betty Browning. The evidence was objected to at the time it was offered by the State, on the ground, among others, that the alleged dying declaration of Mrs. Browning was not competent and admissible evidence in the trial of the accused, who was under the charge of having murdered W. H. Browning, because a dying declaration, in law, is limited to those cases in which the defendant on trial is being tried for the homicide of the person who makes the dying declaration, and that in the trial of one accused of the homicide of any other person than the declarant such a dying statement is hearsay and inadmissible. Over the objection made, the court admitted the testimony. This was error. In § 1026 of the Penal Code it is declared: "Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide." The provision of the statute that dying declarations are admissible in evidence in a case specified is an exception to the hearsay rule, and such declarations or statements are admissible only when they come within the provision of the statute. And the dying declaration of Mrs. Browning does not come within the purview of the statute, the accused not being on trial for the murder of Mrs. Browning. In the case of *Taylor* v. *State*, 120 *Ga.* 857 (48 S. E. 361), the positive rule is announced: "Although the persons killed were shot in the same fight or difficulty, the dying declarations of

the one are not, as such, admissible in evidence on the trial of the slayer for the murder of the other. Penal Code, § 1000; Hughes' Crim. Law & Proc. § 104; Gillett's Ind. & Coll. Ev. § 192." And in *Miliken* v. *State,* 8 *Ga. App.* 478 (69 S. E. 915), it was said: "Declarations, though made by a person in extremis, are not admissible as dying declarations, in a homicide case, where the defendant is not on trial for killing the declarant, though the declarant may have been killed in the transaction to which the trial relates." It is unnecessary to cite other authorities, though a large number of cases decided by appellate courts of other States upholding the rule might be cited.

■ The court charged the jury, in part, as follows: "I charge you, gentlemen, that a dying declaration made by a person in the article of death, who is conscious of his condition, as to the cause of his death, and the person who killed him, are admissible in evidence in a prosecution for a homicide." And then again in the following language: "If you determine that such declaration was made by the said Mrs. Betty Browning in these circumstances claimed, while in the article of death, and that she was conscious of her condition, then you are to give the evidence contained in the declaration, if such were made, just such weight as you think they are entitled to have. You take the evidence of the witnesses touching dying declarations, consider the same, and determine all questions relating thereto by the same rules of evidence as you apply to other witnesses sworn in the case as to other matters." And in another part of his charge the court gave further instructions relative to evidence of dying declarations of Mrs. Browning. Exceptions are taken to each and all these excerpts from the charge, and one of the exceptions is that there is no competent evidence to authorize a charge upon this subject, and that it was not applicable to the case. These exceptions are well taken. If the evidence of the witnesses referred to in the first division of this opinion was erroneously admitted and should have been excluded, then there was no evidence in the case to which a charge upon the subject of dying declarations was applicable, and it was error to give the instructions excepted to.

■ The rulings made in the third, fourth, fifth, and sixth headnotes require no elaboration.

■ During the progress of the trial, over the objection of

movant's counsel, the court admitted for the consideration of the jury the following testimony given by a witness for the State: "I saw a roadster automobile at the filling-station, headed south. I saw the roadster drive up there. It drove up pretty close to where I was, and I saw a man get in and drive off. There was a West Palm Beach sign on the front of it as it drove off. . . I noticed the front of this car when it drove up. . . I have not seen Homer Padgett since this thing happened, or before, that I know of. If I ever saw him I don't know it. I had a little side view and back view of the men who were in this car. They were just medium-sized men is all I could say. One looked a little younger than the other. I could not tell about his age. The man that came up in the automobile walked up to where I was standing and asked me what had happened, and I told him a killing. That was the man that came up in the automobile. He started to get in the car, and another man walked up and got him by the arm, but just what they said I don't know. I did not hear anything. I just saw one walk around the car and the other got in on this side. I did not notice from what direction this second party came. One had hold of the door and started to open it when the other man walked up to him and said something to him, I guess. I saw his mouth working, but I could not hear anything, because there was a car there and I could not hear what happened. The party that walked up to the car got in and drove off." Apparently, as stated in the objection of movant's counsel to the admission of this testimony, it was irrelevant and immaterial, but it does not appear that the same was harmful or prejudicial, and it is not a sufficient ground to require the grant of a new trial.

■ Error is assigned upon the ruling of the court admitting, over the objection of movant's counsel that it was "irrelevant, immaterial, illegal, harmful and prejudicial," the following testimony given by a witness for the State, to wit: "I saw Allen Westberry on the second Saturday night after the murder of the Brownings on August 21st. It was ten or twelve days after the murder that I saw him in Jennings, Florida. He wanted me to go to supper with him. I refused to go, and I saw him again in an hour or two. He seemed to be drinking, and still insisted that I go to supper with him, and I refused again. And then he cursed and said the reason I would not go was I was afraid he did not have the

money to pay for the supper, and he said, 'I will show you.' He pulled out a bill-folder from his pocket and said, 'You see this twenty? I have got plenty of it.' I told him it was a good thing to have. After that he stopped in the grocery store next door and bought some groceries and gave a one-dollar bill in payment. He appeared to have something like six or seven bills, but I could not tell the size of them." The admission of this evidence was not error. Of its probative value the jury were the judges; but we can not say as a matter of law that it was immaterial. There was some testimony from which the jury might have found that robbery was the motive of the murder, and some evidence that W. H. Browning kept money at the place at which he was murdered; and there was other evidence in the case showing a conspiracy and that Allen Westberry was one of the conspirators. In view of this, it is not immaterial to show that he had on his person shortly after the murder a large sum of money. The evidence of the conspiracy is largely dependent upon the confession of Austin Westberry; and while it was held in the case of Allen Westberry v. The State, supra, that the confession could not be introduced in evidence against Allen Westberry, it was competent evidence as against the present defendant.

The rulings made in headnotes 9, 10, 11, and 12 require no elaboration.

Inasmuch as the case is remanded for a new trial, no opinion is expressed as to the sufficiency of the evidence.

*Judgment reversed. All the Justices concur, except Russell, C. J., who concurs in the judgment, but dissents from the ruling made in headnote three.*