28537. SWEAT *v.* THE STATE.

DECIDED OCTOBER 2, 1940.

*H. B. Edwards,* for plaintiff in error.
*H. C. Morgan, H. W. Nelson, solicitors-general,* contra.

MACINTYRE, J. Leonard Sweat was jointly indicted with Garl Sweat and Mack Sweat (all of whom were brothers) for murder, and was convicted of voluntary manslaughter. His motion for new trial was overruled, and he excepted. The indictment charged that he did with malice aforethought kill and murder Byron Hubbard, a human being, "by choking and suffocating him with a

necktie drawn tightly about the neck of the said Byron Hubbard, and by other means and instrumentalities to the grand jurors unknown, . . and . . . for the said accused . . did then and there, unlawfully and with force and arms, feloniously and with malice aforethought kill and murder Byron Hubbard, a human being, by choking and suffocating him with a necktie drawn tightly about the neck of the said Byron Hubbard, and by striking, beating, and wounding him with pistols, bottles, and by hitting him with a metal penny machine which the said accused threw at and towards the said deceased, striking him on the head."

1. It appears that the three Sweat boys were brothers, and went to the place of business of the deceased, Byron Hubbard, commonly known as a "jook joint" or "honkey tonk." Mack Sweat and some other people started fussing, and Hubbard went out and told them if they did not stop he was going to close up his place. Mack cursed and struck Hubbard with his fist, knocking him down the steps. Garl and Leonard Sweat joined in the fight which ensued, and Hubbard's death resulted therefrom. In addition to the evidence that Hubbard was, by the defendant and his brothers who were jointly indicted, beaten in the head with a slot machine about ten or twelve inches square, and choked by his necktie which he had on, the undertaker testified that the pulling of the necktie around the deceased's neck could have caused his death. Charlie Baker testified: "I saw the piece of tie in Leonard's hand. A. J. taken it out of Leonard's hand. The first time I saw the piece of tie Leonard had it, and the last time I saw it A. J. had it." Moreover, the jury were authorized to find that the criminal acts of the three brothers resulted from concerted and associated action; that the criminal acts when linked together showed that they sprang from a common object and had in view the promotion of a common purpose, and that the acts of one were the acts of all those who engaged in the fight. This evidence amply supported the verdict, which has the approval of the trial judge, and this court will not interfere.

2. Special ground 1 complains of the refusal of the judge to exclude the testimony of a witness called by the State, who testified on direct examination as follows: "He was dead when he hit the floor. He was moved from there out to the cabin, and then to the hospital in Tifton. He was already dead. Q. Why was he taken

to the hospital? A. I did not know he was dead. Q. You didn't know he was dead? A. No, they told me." This testimony, when taken in connection with the other testimony of the witness, was to the effect that she saw certain of the jointly indicted boys taking part in the fight in question; that she had never seen them before; and that while she did not know their names, the sheriff said their last name was Sweat; and that whatever their names might be, these were the boys who were engaged in the fight in question. The testimony was properly admitted, and the judge did not commit reversible error in refusing to exclude it.

3. Special ground 2. The evidence that the accused sought to exclude, even if we concede it to have been inadmissible, was immaterial, and it does not appear from the record that it was prejudicial and harmful. Its admission does not require the grant of a new trial. *Westberry* v. *State*, 175 *Ga.* 115 (7) (164 S. E. 905); *Thompson* v. *Thompson*, 77 *Ga.* 692 (7) (3 S. E. 261); *Aycock* v. *State*, 62 *Ga. App.* 812 (10 S. E. 2d, 84).

4. Special ground 3 complains of the refusal of the judge to exclude certain testimony of a witness for the defendant, in answer to questions propounded on cross-examination by the solicitor-general. The judge has a discretion to control the cross-examination of witnesses, and this discretion will not be controlled unless abused. The judge did not abuse his discretion in the instant case. This ground is not meritorious. *Aycock* v. *State*, supra.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*