## 20524. JAMES *v.* THE STATE.

CANDLER, Justice. An indictment charging robbery by force and violence was returned against the defendant Charles W. James in Baldwin County. The jury convicted him of that offense and fixed his punishment at from four to four years in the penitentiary. He moved for a new trial on the usual general grounds, and later amended his motion by adding eight special grounds. The exception is to a judgment denying his amended motion. *Held:*

1. The first special ground of the motion for new trial assigns error on a charge which was given to the jury on the subject of conspiracy. It is not alleged that the instruction complained of was abstractly incorrect, but it is contended that there was no evidence which authorized it. This contention is not sustainable. The jury was fully authorized to find from all the facts and circumstances that there was a corrupt agreement between this defendant and others to commit the offense charged in the indictment; and, in consequence of that agreement and while thus acting together, each aiding and abetting the other, the offense charged was actually perpetrated by them. See *Fincher* v. *State,* 211 *Ga.* 89 (84 S. E. 2d 76). The facts and circumstances which authorized the court to charge on this subject will be pointed out in a subsequent division of this opinion.

(a) It has been repeatedly held by this court that a conspiracy may be proved, though not, as here, alleged in the indictment. See *Chambers* v. *State,* 194 *Ga.* 773, 784 (22 S. E. 2d 487), and the several cases there cited.

2. Over objections, timely made, that a proper foundation had not been laid for the introduction thereof, the court permitted Mack Hall and B. T. Lingold, witnesses for the State, to testify to an incriminating admission made to them by the defendant concerning the part he took in the commission of the offense for which he was on trial. Special grounds 2 and 3 complain of this. Under the unanimous holding of this court in *Barkley* v. *State,* 190 *Ga.* 641 (3) (10 S. E. 2d 32), these grounds of the motion are not meritorious since the objections made were too indefinite to raise any question as to the admissibility of the evidence. For like rulings, see *Freeman* v. *Young,* 147 *Ga.* 699 (3a) (95 S. E. 236) ; *Haden* v. *State,* 176 *Ga.* 304, 310 (168 S. E. 272) ; and *Farr* v. *State,*

83 *Ga. App.* 855 (65 S. E. 2d 270). In *Freeman's* case, supra, it was said: "The objecting party should have indicated what foundation, under the circumstances, should have been laid." All objections to the admissibility of evidence must be made during the trial and new or additional grounds of objection thereto which are made for the first time in a motion for new trial cannot be considered by this court. *Hill* v. *State,* 201 *Ga.* 300, 305 (39 S. E. 2d 675).

3. Eugene Ellis, a witness for the State, was asked the following questions on direct examination by the solicitor-general: "Q. Did you ever have an occasion to be present when the officers together with yourself, were talking to this boy James and the other defendants in this case?" "Q. Have you had a talk with the defendant as to whether he committed the crime charged in the indictment?" "Q. Before the defendant said anything to you or anyone else present about the commission of the crime did you or anyone else present do or say anything to him to make him say anything about the commission of the crime?" "Q. Did you or anyone else present do or say anything to make him say anything whereby he might have the slightest hope of benefit or the remotest fear of injury?" As these questions were propounded, each was objected to by the defendant's counsel on the ground that it was a leading question. Each objection was overruled and the witness answered the first two of these questions in the affirmative and the last two in the negative. Special grounds 4, 5, 6 and 7 of the motion for new trial assign error on these several rulings. Obviously, these grounds of the motion are wholly without any merit since neither question objected to was a leading one. A question is leading when it is so framed as to suggest to the witness the answer which is desired; on the other hand, a question not suggesting the desired answer is not leading where it inquires only into a single fact. *Thompson* v. *Ray,* 92 *Ga.* 285 (2) (18 S. E. 59); *Franks* v. *Gress Lumber Co.,* 111 *Ga.* 87 (36 S. E. 314); *King* v. *Westbrooks,* 114 *Ga.* 307 (40 S. E. 262); 98 C. J. S. 38, § 330 (a).

4. In special ground 8 it is insisted that the court erred in not declaring a mistrial, on motion of the accused, because of a remark made by the solicitor-general while examining Albert Peavy, a witness for the defendant. Respecting this ground of the motion, the record shows that the witness was a

co-indictee of the defendant James and others; and while being cross-examined by the solicitor-general, he was asked if he didn't have a definite interest in how the case terminated. The witness replied by saying that he did have an interest in the result of the trial, as he was innocent; that the defendant was innocent; that others jointly accused with them were likewise innocent; and that he didn't believe the jury would convict an innocent person. To this the solicitor-general replied: "We will see one way or the other." The court, in denying the motion for a mistrial because of this remark, instructed the jury to give it no consideration whatever. This special ground of the motion affords no reason for a reversal of the judgment denying a new trial. The trial judge in passing on a motion for mistrial because of an alleged improper remark by the solicitor-general in the presence of the jury is vested with a discretion, and his action will not be controlled by this court unless his discretion is manifestly abused. Code § 81-1009; *Smith* v. *State*, 204 *Ga.* 184 (2) (48 S. E. 2d 860). Assuming that the remark was an improper one, in view of the judge's instruction to the jury to give it no consideration, we cannot say that the judge's refusal to declare a mistrial was an abuse of his discretion. *Hicks* v. *State*, 196 *Ga.* 671 (27 S. E. 2d 307); *Ward* v. *State*, 199 *Ga.* 203 (33 S. E. 2d 689); *Domingo* v. *State*, 213 *Ga.* 24 (96 S. E. 2d 896).

5. The general grounds of the motion for new trial are not meritorious. Howard Hester, the person alleged to have been robbed, as a witness for the State testified: He lived at Macon, Georgia. He went to Milledgeville during Saturday afternoon on November 8, 1958, to get some work done on his car. He spent the night with James Adams, his brother-in-law. He left Adams' home on Sunday afternoon about 1 o'clock, and telephoned his wife from a nearby filling station that he was on his way home. While at the filling station, he asked an attendant if he knew of a place where he could buy some beer. He was introduced to Ruby Peavy, as a girl who would go with him to get some. They left in his car and went to a place known as the Market Basket. He furnished the money, $2, and she bought four large cans of beer. While they were at the Market Basket, the defendant, his wife, and Albert Peavy drove up and parked behind him. He and Ruby Peavy then went to her cabin at the Tavern Motel.

While in her cabin, he drank two cans of the beer and she drank one. About that time, the defendant (Carl W. James), his wife Lavenia, and Albert Peavy came to the cabin in the defendant's car. The defendant and those with him drank the remaining can of beer. They then decided to get some whisky. He suggested that they go in his car, but the defendant insisted that they go in his, which they did with the defendant driving it. He left his car at Ruby's cabin, putting the keys in his pocket. The defendant and Albert Peavy rode in the front seat; he and the two girls in the back seat. The defendant drove around in various directions for some time and finally pulled out of a side dirt road into a wooded area. There the defendant got out, accused him of trying to kiss his wife, and struck him in the face with his fist. "They" then pulled him out of the car, and the defendant again hit him in the face several times more while Albert Peavy was holding his hands behind him. He was knocked down, and while he was on the ground "they" went through his pockets and got his billfold containing between sixty and seventy dollars, his car keys, and his cigarette lighter. The four then left in the defendant's car and did not return. By holding one eye open with his fingers, he was able to see well enough to walk to a house about a quarter of a mile away. From there he was carried to the sheriff's office, then to the Baldwin County hospital, where he stayed two days, and from there to Dublin hospital, where he remained for two weeks. He testified positively that he had not had any trouble with the defendant before he was struck by him; that he had not tried to kiss his wife; and that he had done nothing to give the defendant any provocation for striking him.

Mack Hall, a witness for the State, testified: As a deputy sheriff of Baldwin County, he arrested the defendant during the afternoon after the alleged robbery of Hester and on the day of its occurrence. The defendant's wife Lavenia James, Albert Peavy, and Ruby Peavy were in the car with him at the time of the arrest. They had eighteen cans of beer and two half-pints of whisky in the car when the arrest was made. The defendant James had Hester's cigarette lighter in his pocket when arrested. He also had in his pocket $18 in currency and $1.53 in coins. He freely and voluntarily stated in the presence of Albert Peavy and the two girls that Peavy took Hester's billfold, cigarette lighter, and the car keys off of

Hester's person after he (the defendant) knocked him down; that Peavy gave him $20, which was taken out of his billfold; that he also gave Ruby Peavy $3 of Hester's money; and that he (Peavy) kept $20 of it. The defendant likewise admitted to him that he threw Hester's car keys in a brush pile at the place where he knocked him down. This witness also testified that Ruby Peavy, at the time of her arrest, told him in the presence of the defendant, his wife, and Albert Peavy that Albert Peavy threw Hester's billfold in the river as they were coming back to Milledgeville after the occasion when the defendant had several times struck Hester.

B. T. Lingold, Sheriff of Baldwin County, as a witness for the State, testified: He talked to the defendant soon after the alleged robbery. At that time the defendant told him that he and Hester had some trouble in a cabin about the defendant's wife, but the defendant at that time denied that they had had any trouble at any other place.

The above is only a small part of the evidence which the State introduced and no useful purpose would be served in detailing more of it. The part we have pointed out, not contradicted by other evidence which the State introduced, is amply sufficient to show that the court did not err, as contended, in charging on the subject of conspiracy; and that the jury was fully authorized by the State's evidence to convict the defendant of the offense charged. Albert Peavy and Ruby Peavy each testified as witnesses for the defendant and their testimony, as well as the defendant's statement to the jury, is in sharp conflict with the State's evidence.

6. The judgment complained of is not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur.*

SUBMITTED JUNE 9, 1959—DECIDED JULY 8, 1959.

*Wilbur B. Nall,* for plaintiff in error.

*George D. Lawrence,* Solicitor-General, *Eugene Cook,* Attorney-General, *Rubye G. Jackson,* Deputy Assistant Attorney-General, contra.