## 29131. McCORQUODALE v. THE STATE.

JORDAN, Justice.

Timothy W. McCorquodale was indicted for murder by the Grand Jury of Fulton County, tried before a jury and found guilty. He was sentenced to death in the electric chair and appeals from the judgment and the sentence.

## I.

The state presented evidence to establish the following facts: On the evening of January 16, 1974, Donna, the victim, a 17-year-old girl, and her friend, Pamela Pharris, were in the area of Peachtree and 10th Street in the City of Atlanta known as "The Strip." While in a restaurant they were accosted by a man named Leroy who invited them to a bar for a beer. While in the bar the two girls engaged in a conversation with two black men. Leroy left the bar and the girls later went to another bar on "The Strip." Leroy met them at this bar, approached their table and accused Donna and Pamela of stealing $40 or $50 from him and giving the money to a black pimp. At this point they were joined by the defendant McCorquodale and his girlfriend, Bonnie Succaw (now Johnson). At the request of Leroy and McCorquodale the girls were taken to a bathroom and searched by Bonnie and a friend. They found no money. McCorquodale and Leroy then summoned a cab, and joined by Bonnie, they took Donna with them to Bonnie's apartment. They arrived at Bonnie's apartment shortly after midnight and found Bonnie's roommate, Linda, and Bonnie's three-year-old daughter asleep. The appellant Mc-Corquodale had lived some eight months prior to this time in the apartment with Bonnie. Linda joined them in the living room of Bonnie's apartment and at this point there was some conversation between McCorquodale and Leroy about Donna being a "nigger lover" and that she needed to be taught a lesson.

The appellant, after telling Donna how pretty she was, raised his fist and hit her across the face. When she stood up, he grabbed her by her blouse, ripping it off. He then proceeded to remove her bra and tied her hands behind her back with a nylon stocking. McCorquodale then removed his belt, which was fastened with a rather large buckle, and repeatedly struck Donna across the back with the buckle end of the belt. He then took off all her clothing and then bound her mouth with tape and a washcloth. Leroy then kicked Donna and she fell to the floor. McCorquodale took his cigarette and burned the victim on the breasts, the thigh, and the navel. He then bit one of Donna's nipples and she began to bleed. He asked

for a razor blade and then sliced the other nipple. He then called for a box of salt and poured it into the wounds he had made on her breasts. At this point Linda, who was eight months pregnant, became ill and went into the bedroom and closed the door. McCorquodale then lit a candle and proceeded to drip hot wax over Donna's body. He held the candle about 1/2 inch from Donna's vagina and dripped the hot wax into this part of her body. He then used a pair of surgical scissors to cut around the victim's clitoris.

While bleeding from her nose and vagina, Leroy forced the victim to perform oral sex on him while McCorquodale had intercourse with her. Then Leroy had intercourse with the victim while McCorquodale forced his penis into the victim's mouth. McCorquodale then found a hard plastic bottle which was about 5 inches in height and placed an antiseptic solution within it, forcing this bottle into Donna's vagina and squirted the solution into her. The victim was then permitted to go to the bathroom to "get cleaned up." While she was in the bathroom, McCorquodale secured a piece of nylon rope and told Bonnie and her roommate that he was going "to kill the girl." He hid in a closet across the hall from the bathroom and when Donna came out of the bathroom he wrapped the nylon cord around her neck. Donna screamed, "My God, you're killing me." As McCorquodale tried to strangle her, the cord cut into his hands and Donna fell to the floor. He fell on top of her and began to strangle her with his bare hands. He removed his hands and the victim began to have convulsions. He again strangled her and then pulled her head up and forward to break her neck. He covered her lifeless body with a sheet and departed the apartment to search for a means of transporting her body from the scene. By this time, it was approximately 6:00 a.m. on the morning of January 17.

McCorquodale soon returned to the apartment and asked Bonnie for her trunk and Leroy and McCorquodale tried to place Donna's body in the trunk. Finding that the body was too large for the trunk McCorquodale proceeded to break Donna's arms and legs by holding them upright while he stomped on them with his foot. Donna's body was then placed in the trunk and the trunk was placed in the

closet behind the curtains. McCorquodale and Leroy then went to sleep on the couch in the living room for the greater portion of the day, leaving the apartment sometime during the afternoon.

Because a strong odor began to emanate from the body, and her efforts to mask the smell with deodorant spray had been unsuccessful, Linda called Bonnie to request that McCorquodale remove the trunk from the apartment. Shortly after 8:00 p.m. McCorquodale arrived at the apartment with a person named Larry. As they attempted to move the trunk from the closet, blood began spilling from the trunk onto the living room floor. McCorquodale placed a towel under the trunk to absorb the blood as they carried the trunk to Larry's car. When McCorquodale and Larry returned to the apartment they told Linda that the body had been dumped out of the trunk into a road and that the trunk was placed under some boxes in a "Dempsey Dumpster." Donna's body was found about half a mile off Highway No. 42 in Clayton County.

## II.

McCorquodale appeals to this court alleging some twenty-six enumerations of error, some of which are redundant and combined for consideration.

1. No further recitation of facts is necessary to establish that the general grounds are without merit. The aggravating circumstances found by the jury were "that the offense of murder . . . was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga. L. 1973, pp. 159, 163 (Code Ann. § 27-2534.1(b 7)). The appellant argues that the aggravating circumstances found by the jury were not connected with the actual homicide in that the victim did not protest the treatment and that the torture, if any, did not lead to the death in that there was a break between the mistreatment and killing of the victim.

As we view the factual setting the torture and killing were all one uninterrupted night of horror, the macabre affair ending with the appellant deliberately killing the victim to cover the heinous and senseless crimes committed upon her. The finding of the jury was amply supported by the evidence and the verdict is not contrary

to law. The trial court did not err in overruling the appellant's motion for new trial.

2. In the absence of a request the court did not err in failing to charge the jury on voluntariness of a confession which was introduced into evidence and read to the jury following a full and complete Jackson-Denno type hearing.

Appellant contends that his confession was involuntary in that it was induced by a detective's promise that he would not be able to see his girlfriend, Bonnie, until such time as he had made a confession. This contention is disputed by the testimony of the detective who stated that Bonnie was present in the room when appellant requested to speak with the detective privately. The detective also testified that he did not promise appellant that he could see his girlfriend only after giving his statement. Code § 38-411 provides: "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury."

The record indicates that the trial court held a full and complete hearing on the issue of voluntariness of the confession, meeting the requirements of Jackson v. Denno, 378 U. S. 368. After this hearing the judge determined that the confession was voluntary and admissible for the jury's consideration. His determination is supported by a preponderance of the evidence as required by *High v. State,* 233 Ga. 153.

In *Thomas v. State,* 233 Ga. 237, this court held that "Under established Georgia law there is no necessity to give a charge on the subject of the voluntariness of a confession unless there is a specific request for it. *Ivy v. State,* 220 Ga. 699, 704 (141 SE2d 541); *Harvey v. State,* 216 Ga. 174, 177 (115 SE2d 345) (both cases approved in *Curry v. State,* 230 Ga. 221 (196 SE2d 443))."

In the absence of a request to charge or an objection to the court's omission to charge the jury on voluntariness of the confession, the trial court did not err. Although there is no burden on defense counsel in a criminal case to object to an instruction as a condition precedent to enumerating it as error, we note here that counsel in answer to an inquiry by the court affirmatively stated that his only

objection related to the charge on voluntary manslaughter. See *Gearin v. State,* 127 Ga. App. 811, 813 (195 SE2d 211) and *Thompkins v. State,* 126 Ga. App. 683, 684 (191 SE2d 555).

We also note that there was ample evidence to support the conviction without the confession, including the testimony of two eyewitnesses to the crime. The Supreme Court of the United States has recently held that "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." Schneble v. Florida, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972). We do not believe that the jury would have found the state's case significantly less persuasive had the confession been excluded.

3. Appellant urges that the trial court erred in refusing to accept his guilty plea and waiver of jury trial. Our statute provides that "any person who has been indicted for an offense punishable by death may enter a plea of guilty at any time after his indictment, and the judge of the superior court having jurisdiction may, in his discretion, during term time or vacation, sentence such person to life imprisonment, or to any punishment authorized by law for the offense named in the indictment: Provided, however, that the judge of the superior court must find one of the statutory aggravating circumstances provided in Section 27.2534.1 before imposing the death penalty except in cases of treason or aircraft hijacking." Code Ann. § 27-2528. A predecessor statute using the same permissive term "may" was held to authorize the judge in his discretion to so act but not to require him to do so. *Massey v. State,* 220 Ga. 883 (142 SE2d 832). We construe this statute likewise. We find no mandatory provision that the judge must accept a plea of guilty under such circumstances. There is no federally recognized right to a criminal trial before a judge sitting alone. Singer v. United States, 380 U. S. 24, 34 (85 SC 783, 13 LE2d 630); Lynch v. Overholser, 369 U. S. 705, 719 (82 SC 1063, 8 LE2d 211). The opinions of this court are in accord. *Palmer v. State,* 195 Ga. 661 (25 SE2d 295).

4. The trial court overruled the appellant's motion to suppress certain evidence obtained without a search

warrant, being "articles of clothing obtained from the defendant and evidence from the defendant's apartment."

As to the evidence obtained from the scene of the crime, the appellant has no standing to object since the evidence shows that he had no possessory interest in the premises searched, nor in the property seized. His girlfriend did have such possessory interest and she consented to the search and seizure. See *Brinks v. State,* 232 Ga. 13 (205 SE2d 247) and United States v. Matlock, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974).

As to the clothing obtained from the defendant the evidence shows that when he came to the police station, though not under arrest, there were spots on his trousers in plain view that appeared to be blood spots. When it was suggested that the trousers should be sent to the laboratory the appellant voluntarily took off his clothing without objection and they were sent to the laboratory. He was furnished a blanket to wrap about himself. Part of the defendant's clothing was a belt with a large buckle. In view of the testimony concerning the beating of the victim with such a belt it was material and relevant. Seizure of the clothing was justified under the "plain view rule" even if permission had not been given. Katz v. United States, 389 U. S. 347; Coolidge v. New Hampshire, 403 U. S. 443.

The trial court did not err in denying the motion to suppress this evidence.

5. There was no error in admitting photographs of the victim. Photographs which tend to show relevant and material facts are admissible although it is alleged that they are designed to inflame and prejudice the jury. *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12); *Dixon v. State,* 231 Ga. 33 (200 SE2d 138).

6. The Act providing for the imposition of the death penalty deals with only one subject and is not violative of the Georgia Constitution. Code Ann. § 2-1908. Each section of Ga. L. 1973, pp. 159-172 relates to the procedure by which the death penalty is imposed, the justification thereof, the review of the same, and other administrative details. Each section is consistent with its announced subject matter, "Provision for Imposition of Death Penalty Made."

7. The trial court did not err in failing to charge the

law of voluntary manslaughter as the evidence did not authorize such instruction. The evidence shows no provocation for the defendant's action. To the contrary it shows the defendant deliberately securing a piece of rope, waiting for the victim to return from the bathroom and stating to those present that he was going to "kill the girl."

8. The appellant was given a list of the witnesses to be called by the state prior to arraignment and afforded the opportunity before the commencement of the trial to interview those witnesses whose names had not previously been furnished to him. This is consonant with Code Ann. § 27-1403. *Yeomans v. State,* 229 Ga. 488 (192 SE2d 362); *Vinson v. State,* 127 Ga. App. 607 (194 SE2d 583).

9. The trial court did not err in holding the arrest of the defendant valid.

Where, as in this case, the police have a local tip concerning the perpetrator, a tip transmitted by a sheriff in another county to the same effect, a complete statement by an eyewitness to the crime implicating the defendant and what appeared to be blood spatters on the defendant's trousers, they were justified in arresting the defendant without a warrant "for other cause there is likely to be failure of justice for want of an officer to issue a warrant." Code § 27-207. *Paige v. State,* 219 Ga. 569 (134 SE2d 793); *Johnson v. Plunkett,* 215 Ga. 353 (110 SE2d 745). Neither do such circumstances vitiate a conviction, otherwise valid, had following waiver of a commitment hearing, indictment by grand jury and trial by jury. *Blake v. State,* 109 Ga. App. 636 (2) (137 SE2d 49) and cits. See also Frisbie v. Collins, 342 U. S. 519 (72 SC 509, 96 LE 541).

10. Enumerations of error 17, 18, and 19 complain that the trial court improperly denied defense motions for mistrial based on certain remarks of the district attorney during closing argument. We have carefully reviewed these remarks in the context in which made and find no reversible error. It is within the court's discretion as to whether an allegedly improper argument of counsel is the basis for granting a mistrial, and this discretion should not be interfered with unless manifestly abused. Code § 81-1009; *James v. State,* 215 Ga. 213 (109 SE2d 735).

11. We have upheld the constitutionality of the

Georgia death penalty statute and we are not persuaded to reconsider the decision in those cases. *Coley v. State,* 231 Ga. 829 (204 SE2d 612); *Eberheart v. State,* 232 Ga. 247, supra; and *House v. State,* 232 Ga. 140 (205 SE2d 217).

12. There is no merit in appellant's contention that Code Ann. § 27-2534.1 (c) is unconstitutional in that it allows only a portion of the court's charge to the jury to be given in writing. The written material furnished the court in this case is authorized and required by the statute, is not evidence in the case, is purely procedural, is restricted to the sentencing phase of the bifurcated trial and amounts to no more than a written formulation of the jury's potential verdict. There is no constitutional, legislative, or judicial prohibition against such practice.

13. Jurors who stated that they could not under any circumstances consider imposition of the death penalty were properly excused for cause. Witherspoon v. Illinois, 319 U. S. 510; *Eberheart v. State,* supra; *Pass v. State,* 227 Ga. 730 (182 SE2d 779) and *Hart v. State,* 227 Ga. 171 (179 SE2d 346).

### III.
### Sentence Review.

We have applied the test of constitutionality established by the standards prescribed in Ga. L. 1973, p. 159 (Code Ann. § 27-2537 (c) (1-3) et seq.), as we have in prior cases. *Coley v. State,* 231 Ga. 829; *Eberheart v. State,* 232 Ga. 247; and *House v. State,* 232 Ga. 140, all supra. Those similar cases we considered in reviewing this case are listed in an appendix attached to this opinion.

We conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and the evidence supports the jury's finding of statutory aggravating circumstances.

Considering both the crime and the defendant, and after comparing the evidence and sentence in this case with that of previous cases, we conclude the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases. In no case we have reviewed has the depravity of the defendant and the torture of the victim exceeded that established by the evidence and

testimony of the witnesses in this case. We affirm the sentence of death.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the judgment only, Hall, J. who concurs specially in Division 3, and Gunter, J., who dissents.*

ARGUED OCTOBER 15, 1974 — DECIDED DECEMBER 3, 1974 — REHEARING DENIED DECEMBER 17, 1974.

*Robert L. Ridley, Glenn Zell,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley,* for appellee.

### APPENDIX.

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); 229 Ga. 191 (190 SE2d 921); *Jackson v. State,* 230 Ga. 181 (195 SE2d 921); *Watson v.State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *Creamer v. State,* 232 Ga. 136 (205 SE2d 240); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Gregg v. State,* 233 Ga. 117 (210 SE2d —); *Carter v. State,* 227 Ga. 788 (183 SE2d 392); *Wheeler v. State,* 229 Ga. 617 (193 SE2d 819); *Allen v. State,* 231 Ga. 18 (200 SE2d 106); *Smith v. State,* 230 Ga. 876 (199 SE2d 793); *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445); *Echols v. State,* 231 Ga. 633 (203 SE2d 165); *Emmett v. State,* 232 Ga. 110 (205 SE2d 231).