33696. GREEN v. THE STATE.

UNDERCOFLER, Presiding Justice.

Roosevelt Green, Jr., was convicted of the murder of Teresa Carol Allen and sentenced to death. The appellant is before this court on direct appeal of his conviction and for mandatory review of the death sentence.

Prior to this trial Carzell Moore was convicted of the murder and rape of Teresa Carol Allen and sentenced to death for both offenses. The convictions and death sentences of Moore were affirmed in *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978). The evidence in Moore's trial adequately portrays the factual situation and will be repeated only where necessary for resolution of some issue.

*I. Enumerations of Error*

1. The first three enumerations all relate to the general ground of appeal in that they allege (1) the verdict and sentence are not supported by the evidence; (2) the verdict and sentence are contrary to the law and the evidence; and (3) the trial court erred in overruling defendant's motion for a directed verdict of acquittal.

The only issue presented to this court by these enumerations is whether there is any evidence to support the verdict. *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977); *Drake v. State,* 241 Ga. 583 (1978); *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975); *Ridley v. State,* 236 Ga. 147 (223 SE2d 131) (1976). In making this determination we view the evidence in the light most favorable to the verdict rendered and resolve all conflict in the evidence in favor of the verdict. *Eubanks v. State,* 240 Ga. 544 (242 SE2d 41) (1978); *Harris v. State,* 236 Ga. 766

(225 SE2d 263) (1976); *Myers v. State,* 236 Ga. 677 (225 SE2d 53) (1976); *Harris v. State,* 234 Ga. 871 (218 SE2d 583) (1975).

From the evidence presented at the trial the jury was authorized to find the following:

a. The appellant was in the area where Miss Allen was robbed and kidnapped shortly before the crime without any means of transportation or funds.

b. He was not seen in the area after the kidnapping and robbery occurred.

c. The appellant appeared in South Carolina driving Teresa Allen's automobile (which he asked a friend to burn for him) approximately nine hours after the robbery and kidnapping.

d. The convenience store in Cochran that Miss Allen operated was robbed of bills and change. When he appeared in South Carolina, the appellant had in his possession a large quantity of money, both bills and change.

e. The appellant had the murder weapon in his possession when he arrived in South Carolina.

f. A glove found at the scene of the murder had hairs on it similar to those of both appellant and the victim.

g. Caucasian head hair identical to the hair of the victim was located on a sweater located in the appellant's suitcase.

h. Approximately twelve days after Teresa Allen had been shot to death in Monroe County, Georgia, the appellant told his girl friend that he had shot or killed a girl in Georgia.

The jury had before it ample evidence to support the verdict and the trial court did not err in overruling the appellant's motion for a directed verdict of acquittal.

Enumerations 1, 2, and 3 are without merit.

2. In Enumeration 4, the appellant alleges, "The trial court erred in denying defendant's motion for a change of venue."

The appellant's motion was based on prejudicial pre-trial publicity.

When the appellant's motion for a change of venue was heard on January 6, 1978, the trial court withheld ruling until the voir dire examination of the jurors had

been conducted.

In denying the motion for change of venue the trial court reflected that "it is the finding of the court that the jurors that were put upon the defendant in this case were impartial; that they were not influenced, or would not or will not be influenced by what they may have read or heard about the case." The testimony of the prospective jurors supports this finding.

The trial judge did not abuse his discretion in denying the appellant's motion for change of venue. *Campbell v. State,* 240 Ga. 352, supra; *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Wilkes v. State,* 238 Ga. 57 (230 SE2d 867) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973).

3. In Enumeration 5, the appellant alleges, "The trial court erred in denying defendant's motion to suppress evidence illegally seized."

The evidence sought to be suppressed by the appellant was a suitcase identified as belonging to the appellant that was located in a building where the appellant had no authority to be or to store his property. The appellant was neither landlord nor tenant. Both the sometime tenant and the owner testified that the appellant had no authority to live there. The owner of the building opened the suitcase and examined the contents and then turned the suitcase with its contents over to the police.

"Probable cause and a warrant are not required for a search and seizure which is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854); *McKendree v. State,* 133 Ga. App. 295, 296 (211 SE2d 154) (1974); *Hall v. State,* 239 Ga. 832 (238 SE2d 912) (1977). " 'When the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' United States v. Matlock, 415 U. S. 164, 171 (94 SC 988, 39 LE2d 242) (1974)." *Peek v. State,* 239 Ga. 422, 426 (238 SE2d 12)

(1977); *Hall v. State,* 239 Ga. 832, supra. In addition to the valid permission given to seize the suitcase and its contents, the status of the appellant in relation to the building is such that he has no standing to challenge the search. Brown v. United States, 411 U. S. 223, 229-230 (1973).

Enumeration 5 is without merit.

4. In Enumeration 6, the appellant alleges, "The trial court erred in limiting defendant's right to cross examine the witness Charlie Livingston on the issue of his alleged identification of the rifle, State's Exhibit No. 6."

The right to cross examination, thorough and sifting, shall belong to every party as to the witnesses called against him. Code Ann. § 38-1705. This right is, however, subject to limitations to prevent abuse. In a case such as this one where the question asked had already been answered and the counsel had begun to be argumentative with the witness we cannot say the trial court abused its discretion. Control of the cross examination of a witness is to a great degree within the discretion of the trial court and will not be controlled unless abused. *Eades v. State,* 232 Ga. 735 (208 SE2d 791) (1974); *McNabb v. State,* 70 Ga. App. 798 (29 SE2d 643) (1944); *Sweat v. State,* 63 Ga. App. 299 (11 SE2d 40) (1940).

Enumeration 6 is without merit.

5. In Enumeration 7, the appellant alleges, "The trial court erred in sending the jury out of the courtroom, allowing the district attorney to prompt his witness, and then allowing the district attorney to cross examine and impeach his own witness, Charlie Livingston."

This enumeration is founded on the testimony of Charlie Livingston who could not remember at this trial the color of both of the money bags he had seen in the victim's car which was in the possession of the appellant when he arrived in South Carolina, or the lettering that had been on the bags. When his memory was refreshed concerning his testimony at Carzell Moore's trial, he was able to testify concerning the color of the bags and his memory of the bags was restored. Later, all of these developments were brought to the jury's attention by appellant's counsel so that they were fully apprised of

what had transpired. The witness later said he had misunderstood when the word "container" was used in asking about any money bags.

A witness may use any source to refresh his memory, so long as he testified from his memory thus refreshed. Agnor's Ga. Evidence, § 4-10.

As long as the witness is willing to swear from his memory as refreshed, his memory may be refreshed by any kind of stimulus, "a song, or a face, or a newspaper item." Jewett v. United States, 15 F2d 955 (9th Cir., 1926). It was error to refuse to permit a medical witness to refresh his memory from x-ray photographs which he had not personally taken. Smith v. Morning News, Inc., 99 Ga. App. 547 (109 SE2d 639) (1959). A witness should be able to use almost any writing to refresh his memory. Hall v. State, 130 Ga. App. 233 (202 SE2d 674) (1973). See also Agnor's Ga. Evidence, § 4-10.

No issue of impeachment of the state's own witness appears to be presented here. Code Ann. § 38-1801.

Enumeration 7 is without merit.

6. In Enumeration 8, "The trial court erred in denying defendant's motion for a mistrial upon the basis that defendant had been exhibited to the jury in chains."

The appellant had previously escaped from confinement twice and precautions taken for his security were to employ a travel belt which consisted of a belt around the waist and one handcuff on each side so designed that one hand cannot reach the other. He was thus secured when returning from lunch on the day in question. The appellant makes only a bare allegation. The evidence shows that a group of people was coming across the street as the appellant was entering the building where the trial was held. There is no testimony that they were jurors or that they were not jurors. There is no evidence that any of the people saw the defendant. Appellant did not testify in support of the allegation and defendant's attorney did not wish to have the jurors polled to determine if any of them had seen the defendant. As a precaution, the trial court instructed the jury that nothing seen or heard outside of the courtroom should affect their verdict.

The trial court did not err in overruling the

appellant's motion for a mistrial. *Morris v. State,* 228 Ga. 39 (184 SE2d 82) (1971); *Brand v. Wofford,* 230 Ga. 750 (199 SE2d 231) (1973).

7. In Enumeration 9, the appellant alleges, "The trial court erred in denying defendant's motion for a mistrial based upon the inflammatory remarks of the district attorney made in the presence of the jury."

The remarks in question were made in the following context:

"By Mr. Milam: Your Honor, now I object to the district attorney telling us what the testimony was. These jurors here have ears, they heard what the testimony was and they heard what this man said. I also would ask that the court instruct the Jury that the court's statement as to what might or might not have been said, of course, is not evidence and it's not — By the Court: No, the court does not intend that; I am just saying that the state is offering it for that purpose and for that purpose only and I'm not telling the jury what the evidence is, but I am explaining to them why this particular evidence is being admitted, for that limited purpose only. By Mr. Smith: Well, Your Honor, as far as that is concerned, I know the jury has ears, and so did the victim until somebody shot one off. By Mr. Milam: Your Honor, I object to that and I move — By the Court: I will sustain the objection. By Mr. Milam: I move the court for a mistrial, too, Your Honor. By the Court: I think that statement was uncalled for and I admonish the district attorney not to make statements like that anymore. By Mr. Smith: I apologize to the court. By the Court: And I instruct the jury to disregard it completely and don't let it have any bearing on whatever verdict you reach. You make a verdict based on the evidence. By Mr. Milam: You can come down."

We note there was evidence in the case from which the jury could have found that someone shot the victim's ear off, but assuming without deciding that the remarks of the district attorney were improper, the refusal to grant the mistrial was not error under these circumstances. The corrective action taken by the trial court was the proper one for improper conduct by counsel. Code Ann. § 81-1009. Whether to grant a mistrial after taking precautionary measures is within the court's discretion. Code Ann. §

81-1009. *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *James v. State,* 215 Ga. 213 (109 SE2d 735) (1959). We find no abuse of discretion in refusing to grant a mistrial and the appellant declined to pursue the issue by renewal of his motion for a mistrial. *Curtis v. State,* 224 Ga. 870 (165 SE2d 150) (1968).

8. In Enumeration 10, the appellant alleges that the trial court erred in admitting into evidence State's Exhibits 6, 8, 26, 27, 28, 31, 37, 38, 39, 40, and 41 over objection by the defendant.

a. Exhibits 6 and 8 were a rifle and rifle strap. There was evidence from which the jury could conclude that the rifle was in the possession of the appellant when he arrived in South Carolina and the strap was on the rifle. It is not necessary to establish a chain of custody where a distinct physical object, such as a rifle, is identified. The rifle was identified by the owner of the rifle as well as the strap. There was evidence that the rifle fired the cartridge cases and lead jacket of the bullet found at the scene of the victim's body.

b. Exhibits 26, 27, and 28 being pieces of flesh, bone, and teeth, because of their proximity to the lead jacket and cartridge cases fired from the rifle were relevant for the jury's consideration of the causal connection between the rifle possessed by the appellant, the cartridges fired therefrom and injuries to the victim. *Moore v. State,* 240 Ga. 807, supra.

c. Exhibit 31 was identified as the bullet and two cartridge cases that were found at the scene and were properly admissible as indicated in 8 b above.

d. Exhibits 37, 38, 39, 40, and 41, photographs of the deceased taken at the funeral home just prior to autopsy, were properly admitted to illustrate the nature, the extent, and the location of the wounds. *Moore v. State,* 240 Ga. 807, supra, at p. 816, and cits.

Enumeration 10 is without merit.

9. In Enumeration 11, the appellant alleges, "The trial court erred in overruling the defendant's objections to the testimony of state's witness Clarence Sims based upon relevancy and due process."

During direct testimony Sheriff Bittick testified that the appellant had told him that he had stolen the change

he had with him when he arrived in South Carolina from one Clarence Sims in Apopka, Florida. Later the court admitted, over objection, the testimony of Clarence Sims stating that he had not missed any money.

Possession of the change was circumstantial evidence. Circumstantial evidence is admissible. Code Ann. § 38-102. To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Code Ann. § 38-109. Accordingly, the prosecution had a duty to rebut any reasonable hypothesis that the appellant obtained the change other than from the victim who was murdered. Negative evidence is admissible as well as positive evidence. Code Ann. § 38-111.

Enumeration 11 is without merit.

10. In Enumeration 12, the appellant alleges, "The trial court erred in admitting over objection the testimony of Sheriff L. C. Bittick relating to a statement or statements allegedly made by the defendant while being transported by said state's witness. The witness could not recall sufficient facts for the court to determine whether the alleged statement or statements were freely and voluntarily made. The burden of proving same is upon the state. The court's admission of said testimony without sufficient showing was violative of the defendant's right to be confronted by his accusers and his right to cross examine the witness."

At a Jackson-Denno type hearing outside the presence of the jury, the sheriff testified that the appellant was allowed to read his rights under the "Miranda decision" from a form. He said he was twenty years old and had a tenth grade education in public school in Alabama. The sheriff identified himself and the appellant read the form to himself and signed it. He was asked if he understood it and he said he had. Sheriff Bittick testified the appellant indicated he was willing to talk to them but did not indicate he wanted a lawyer. He further testified the statement was freely and voluntarily made and no promise was made or threat or coercion used to get him to talk. The trial court found that any statement he may

have made was done of his own accord, without coercion, voluntarily, without any hope of reward, without any threat and that it was a statement made on an inquiry of his own. The statements were made in the car on the way to Atlanta from South Carolina and consisted of asking the manner in which the sheriff found or located the rifle (in earlier statements the appellant had never mentioned a rifle being in the car) and inquiring if Georgia had the death penalty.

The state met the burden of satisfying the trial court of the voluntariness of the statements and there is no reason to disturb that finding. Any questions concerning the clarity of the witness' memory are properly questions for the jury in determining the credibility of witnesses. Code Ann. § 38-1805.

Enumeration 12 is without merit.

11. In Enumerations 13 and 14, the appellant alleges the trial court erred in admitting evidence of prior convictions of defendant without proof that defendant was represented by counsel at the time of such convictions and prior to allowing any showing by the defendant that he was unrepresented at the time of the prior convictions.

The appellant had been placed on notice that the state would introduce evidence of the two prior convictions in aggravation in accord with Code Ann. § 27-2503. They were properly authenticated and the documents indicate on their face "the defendant in his own proper person and by his attorney" was arraigned and entered pleas of guilty. The trial court admitted the convictions initially with permission for the appellant to put up whatever evidence might be appropriate. The appellant subsequently testified that he had a lawyer with him but the lawyer did nothing but "stand by him while he got his time."

Under these circumstances we cannot say that the trial court acted without proper basis in admitting the evidence of prior convictions. *Potts v. State,* 241 Ga. 67, 83 (243 SE2d 510) (1978).

Enumerations 13 and 14 are without merit.

12. In Enumeration 15 the appellant alleges, "The trial court erred in allowing the jury to consider State Exhibits No. 26, 27, and 28 in the sentencing stage of the

trial, over objection, upon the ground that same had no probative value and could only inflame the jurors' minds."

These particular exhibits were admitted in evidence on the issue of guilt or innocence.

In a pre-sentence hearing the judge (or jury) shall hear additional evidence in extenuation, mitigation, and aggravation of punishment. Code Ann. § 27-2503. The pre-sentence hearing is for additional evidence and in no way excludes from consideration on the sentence evidence heard on the issue of guilt or innocence. *Eberheart v. State,* 232 Ga. 247, 253 (206 SE2d 12) (1974); *Hooks v. State,* 233 Ga. 149 (2) (210 SE2d 668) (1974). (Both interpreting similar language in the former section on pre-sentence hearings, Code Ann. § 27-2534.)

Additionally, these exhibits were relevant to a determination of one of the statutory aggravating circumstances found by the jury that "The offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant."

Enumeration 15 is without merit.

13. The appellant's contention in Enumeration 16, that the aggravating circumstance relating to the commission of murder during the commission of other capital felonies was inapplicable because armed robbery and kidnapping are no longer capital felonies is without merit.

This issue has been addressed by this court and resolved contrary to the appellant's position. *Peek v. State,* 239 Ga. 422, 431-432 (238 SE2d 12) (1977).

14. In Enumeration 17, the appellant alleges, "The trial court erred in refusing to admit the testimony of defendant's witness Thomas Pasby as a mitigating circumstance."

During the pre-sentence hearing the appellant attempted to introduce the testimony of Thomas Pasby to the effect that the co-defendant, Carzell Moore, told him (Pasby) that he (Moore), and not the appellant, was the actual perpetrator of the murder. The trial court sustained the state's objection to the testimony on the grounds that it was hearsay. Carzell Moore had been tried and sentenced to death in an earlier trial and appellate

review had not yet been completed in his trial. Appellant was permitted to examine Thomas Pasby outside the hearing of the court to show what he intended to introduce and thereafter introduced a copy of Pasby's testimony in the trial of Carzell Moore for consideration on appeal of the propriety of the trial court's ruling.

In *Little v. Stynchcombe,* 227 Ga. 311 (2) (180 SE2d 541) (1971) this court held: "Counsel for the appellant attempted to have a witness testify that another person had made statements admitting the crimes for which the appellant was convicted. The state objected to such evidence on the basis that it was hearsay.

"Code § 38-301 provides: 'Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity.' Furthermore, 'Declarations by another person to the effect that he, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused upon his trial.' " Accord, *Bryant v. State,* 197 Ga. 641 (9) (30 SE2d 259) (1944); *Beach v. State,* 138 Ga. 265 (75 SE 139) (1912); *Robison v. State,* 114 Ga. 445 (40 SE 253) (1901). This has been the law in Georgia for over one hundred years. *Lowry v. State,* 100 Ga. 574 (28 SE 419) (1897); *Delk v. State,* 99 Ga. 667 (3) (26 SE 752) (1896); *Briscoe v. State,* 95 Ga. 496 (20 SE 211) (1894); *Woolfolk v. State,* 85 Ga. 69 (15) (11 SE 814) (1890); *Kelly v. State,* 82 Ga. 441 (2) (9 SE 171) (1889); *Daniel v. State,* 65 Ga. 199 (1) (1880); *Lyon v. State,* 22 Ga. 399 (1) (1857).

The trial court did not err under the law of this state.

The appellant urges that the testimony of Thomas Pasby was admissible as a mitigating circumstance and urges its admission here as a case of necessity as an exception to the hearsay rule although recognizing that declarations against interest must be against pecuniary interest and not penal interest, citing *Moore v. Atlanta Transit System, Inc.,* 105 Ga. App. 70 (123 SE2d 693) (1961), and quoting from *Jasper County v. Butts County,* 147 Ga. 672 (95 SE 254) (1918): "The modern tendency is to relax rather than to restrict the rules for the admission of evidence, to the end that the discovery of truth may be

aided, rather than obstructed." This court has not, however, recognized an exception to the hearsay rule in the circumstances urged by the appellant.

Appellant relies on the United States Supreme Court case of Chambers v. Mississippi, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973) in support of his position that the court should have relaxed the long standing rule of evidence in this state. The Supreme Court of the United States there mandated a relaxation of the penal interest limitation on the declaration against interest exception to the hearsay rule in the particular posture of the facts in that case. The situation in the appellant's case is clearly distinguishable. In Chambers the only offense with Chambers' alleged involvement was the killing of a policeman with no evidence of a conspiracy or of concerted criminal activity that would make Chambers guilty of the crime on a conspiracy or accomplice theory.

In the instant case, the appellant did not offer the testimony of Pasby on the issue of guilt or innocence, but instead offered it in mitigation of punishment. If the testimony of Pasby were put in evidence he would of necessity be required to relate Carzell Moore's statement to him rather than simply to state the conclusion that Carzell Moore said he had killed her. If so, his testimony would show that the appellant actively and knowingly participated in the entire criminal enterprise including the robbery, kidnapping, and rape of the victim and left her on a lonely road with Moore who was armed and had told the appellant how he could kill, went for gas while Moore killed her, and helped throw her body into the bushes. He then took a portion of the robbery proceeds and left the state with the victim's car and the murder weapon.

Although this state has not enumerated specific mitigating circumstances, some authorities do recognize as a mitigating circumstance that "a defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor constitutes a mitigating circumstance." The defendant's participation during the course of the criminal enterprise in leaving his kidnap victim with his armed accomplice on a lonely road while he went for gas could not on any reasonable basis be termed minor

participation.

While we do not hold that there would never be a case in which the declaration against interest exception to the hearsay rule should be extended to declarations against penal interest, the facts of the appellant's case do not justify such an extension.

Accordingly, Enumeration 17 is without merit.

15. In Enumeration 18, the appellant alleges: "The trial court erred in instructing the jury as follows: The court charges you that the jury would not be authorized to consider imposing the death penalty unless you find one or more of the alleged statutory aggravating circumstances which the state contends existed at the time of the alleged offense. Said charge failed to inform the jury that it was necessary that they find the statutory aggravating circumstance *beyond a reasonable doubt."*

We must examine the charge in its entirety in determining its sufficiency. *Johnson v. State,* 237 Ga. 495 (228 SE2d 879) (1976). Four times during his charge on the sentence the trial court instructed the jury that the statutory aggravating circumstances must be found to be present beyond a reasonable doubt. We believe the jury was adequately and clearly charged on this point.

Enumeration 18 is without merit.

### *II. Sentence Review*

The death penalty imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1 to authorize affirmance. This court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's findings of statutory aggravating circumstances; and, whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3).

We have reviewed the trial transcript and record and have made a comparison of the evidence and sentences in similar cases pursuant to the mandate of the statute. We have considered enumerations of error 13, 14, 15, 16, 17, and 18, as requested by the appellant. Using the standards prescribed for our review by the statute, we

conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty the jury found the following statutory aggravating circumstances:

1. The offense of murder was committed while the offender was engaged in the commission of additional capital felonies, to wit: kidnapping and armed robbery of Teresa Carol Allen (Code Ann. § 27-2534.1 (b) (2)); and

2. The offense of murder was outrageously and wantonly vile, horrible and inhumane in that it involved torture of the victim and depravity of mind on the part of the defendant (Code Ann. § 27-2534.1 (b) (7)).

The evidence supports the jury's findings of statutory aggravating circumstances and the verdict is factually substantiated.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed and find the similar cases listed in the Appendix support the affirmance of the death penalty in this case. Roosevelt Green, Jr.'s, sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Hall and Hill, JJ., who dissent.*

ARGUED JUNE 20, 1978 — DECIDED SEPTEMBER 7, 1978 — REHEARING DENIED SEPTEMBER 28, 1978.

*Richard Milam,* for appellant.

*E. Byron Smith, District Attorney, Kenneth R. Waldrop, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl Robinson, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Mitchell v. State,* 234

Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Goodwin v. State,* 236 Ga. 339 (233 SE2d 703) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Davis v. State,* 241 Ga. 376 (1978).

HALL, Justice, dissenting as to Division 14 and the sentence.

In my opinion the trial court erred in refusing to admit the testimony of defendant's witness Thomas Pasby as a mitigating circumstance. Pasby had testified for the state in the trial of Carzell Moore that Moore had told him that he (Moore), and not the appellant, was the actual perpetrator of the murder. When the same testimony was offered in this case by Green as a mitigating circumstance, the state objected on the ground of hearsay and the trial court sustained the objection. Based upon the peculiar circumstances of this case, it is my opinion that the evidence should have been admitted. The normal rules of evidence should not be automatically applied to every aspect of the sentencing phase of the trial where the issue may be death or mercy. "Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques— probation, parole, work furloughs, to name a few—and various post conviction remedies, may be available to modify an initial sentence of confinement in noncapital cases. The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence. There is no perfect procedure for deciding in which cases governmental authority should be used to impose death.

But a statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." Lockett v. Ohio, — U. S. — (98 SC 2954, 57 LE2d 973) (1978). The court pointed out that in upholding the Georgia statute in Gregg v. Georgia, 428 U. S. 153 (1976) it "noted that the statute permitted the jury 'to consider any aggravating or mitigating circumstances,' see Gregg, supra, at 206, . . . and that the Georgia Supreme Court had approved 'open and far ranging argument' in presentence hearings, id., at 203 . . ." Lockett, supra, at 991. In footnote 14, it noted "that the Georgia Legislature had decided to permit 'the jury to dispense mercy on the basis of factors too intangible to write into a statute.' Gregg, 428 U. S., at 222. . ." Lockett, supra, at 991. This interpretation was restated in a recent decision of this court where we held that the "conclusion is inescapable that the legislture meant to empower the jury to consider as mitigating anything they found to be mitigating, without limitation or definition." *Spivey v. State,* 241 Ga. 477, 479 (246 SE2d 288) (1978).

Pasby's testimony is an aggravating circumstance when considered in the sentencing phase of Moore's trial as well as a mitigating circumstance when considered in the sentencing phase of Green's trial. The state introduced the evidence in Moore and objected to its admission in Green. I would not allow the state to take such inconsistent positions where the choice is between life and death.

HILL, Justice, dissenting.

I join Justice Hall's dissent for the reasons he has expressed and for the further reason that here the state's hearsay objection has the legal effect of suppressing evidence favorable to the defense on which the state relied in another case. This violates the principle set forth in Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d

215) (1963), just as much as if the state had concealed from this defendant the existence of Pasby's mitigating testimony. Brady serves only a very limited purpose if the state can exclude from the trial material which Brady would require the state to make known to the defendant, and on which the state relies in securing the conviction of a codefendant.